367 So.2d 633 (1979)
AMEY, INC., a Florida Corporation, Appellant,
v.
HENDERSON, FRANKLIN, STARNES & HOLT, P.A., and Gulf Insurance Company, Appellees.
No. 78-513.
District Court of Appeal of Florida, Second District.
January 19, 1979.
Rehearing Denied February 15, 1979.
*634 T. Rankin Terry, Jr. of Terry, Adams & Corbin, Fort Myers, for appellant.
G. Hunter Gibbons and Andrew D. Owens, Jr. of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, Sarasota, for appellees.
GRIMES, Chief Judge.
This is an appeal from a summary judgment exonerating a law firm from liability for any damages caused by an allegedly faulty title search.
The appellant (buyer) entered into a contract for the purchase of real property. In order to fund the purchase, the buyer applied to the Lee County Bank for a $60,000 loan to be secured by a mortgage on the property being purchased. An abstract of title to the property was updated through October 10, 1976, and delivered to appellees (law firm), who were the attorneys for the bank. One of the attorneys examined the abstract and issued a preliminary opinion of title to the bank covering the period of time from the earliest public records through the date the abstract was certified. The preliminary opinion included eleven items which had to be obtained or had to be resolved before the law firm would issue a final opinion of title.
The closing of the purchase and the loan was held in the bank on November 23, 1976. The lawyer who had written the preliminary title opinion was present at the bank on other business that day, and the bank asked him to sit in on the closing in order to examine the documents which had been submitted in response to the exceptions contained in the preliminary title opinion. The bank had not requested the law firm to make any title search covering the period subsequent to October 10, 1976. The bank charged the buyer the $325 fee paid to the law firm for examination of the title.
After the closing it was discovered that on November 3, 1976, the Internal Revenue Service had recorded a lien against the property for certain income taxes owed by the sellers. The buyer then sued the law firm for damages. The court ultimately concluded that the law firm owed no legal duty to the buyer.
At the outset, we find it difficult to see how the law firm could be held liable to anyone when no one requested a title search beyond October 10, 1976. The mere presence of the lawyer at the closing under the circumstances outlined above would not change the picture. Assuming for the sake of argument, however, that the law firm was negligent in not searching the public records from October 10, 1976, to the date of closing so as to be in a position to advise of the existence of the income tax lien, we cannot see how this could constitute a violation of a legal duty to one who was not the law firm's client. We are unwilling to hold that the buyer was a third party beneficiary of the contract between the bank and the law firm.
In seeking to overcome the absence of privity, the buyer cites McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). In McAbee the court upheld a complaint against an attorney which alleged that, by virtue of negligent advice by the attorney to the plaintiff's decedent, the plaintiff had been deprived of the inheritance she would have received had the decedent's wishes been carried out. The scope of this ruling, however, was circumscribed by the same court in Adams v. Chenowith, 349 So.2d 230 (Fla. 4th DCA 1977). In Adams a real estate purchaser was denied a cause of action against the seller's attorney for a mistake in the closing statement which resulted in the purchaser paying the seller more than the amount called for by the contract. The court made the following observation:

*635 We have considered the case of McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976), and find it clearly distinguishable from this case. There the attorney owed a duty to a testatrix to make a will for the benefit of her daughter to whom this court held a duty was owed also. The lawyer in that case represented only one "side" of a transaction because there was only one side. Here there are two sides, two interests to be protected and we cannot hold a lawyer responsible to all parties in a transaction unless it is alleged (and proved) he committed some non-negligent tort such as fraud or theft or the like. There is not even a hint of that here.
Adams v. Chenowith, supra at 231.
Adams is most persuasive. Just as in Adams, there was more than one "side" of the transaction before us. The law firm's obligation ran to its client. There is no suggestion that the buyer was harmed by any type of fraudulent conduct. It may be that in transactions such as this the buyer often chooses to rely on the expertise of the lender's lawyer on the premise that the lawyer would not approve the title for the loan unless the title were clear. However, this is a calculated risk, and if it proves to be unfounded, the buyer has no claim that the lawyer violates a duty owed to him. To hold otherwise would place the lawyer in an untenable position, particularly when it is well known that lawyers will often pass certain title defects when examining a title for a loan but refuse to do so when representing a purchaser. The fact that the buyer had to pay the law firm's fee did not establish a lawyer-client relationship. The fee was charged to the bank, and the bank simply chose to make the payment of this expense item one of the conditions of the loan.
AFFIRMED.
HOBSON and SCHEB, JJ., concur.