ROBERT G. PAGE & another[1] *vs.* CHARLES E. FRAZIER, JR., & another.[2]

Barnstable.  September 17, 1982. — January 26, 1983.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney at Law,* Negligence, Attorney-client relationship.  *Negligence,* Attorney.  *Actionable Tort.  Deceit.*

A provision in G. L. c. 93, § 70, that a certification of title to certain residential property prepared by a mortgagee's attorney shall be deemed to have been rendered for the benefit of the mortgagor of the property to the same extent as for the mortgagee was not applicable for the benefit of mortgagors who were purchasers of unimproved land. [60-61]

In an action for damages resulting from an attorney's erroneous certification of title to a parcel of land, the evidence supported the judge's finding that no attorney-client relationship existed between the purchasers of the land and the attorney, who had been retained by the mortgagee bank to examine the seller's title.  [61-62]

In the absence of an attorney-client relationship, the mortgagors of a parcel of land were precluded from recovering damages from a mortgagee bank's attorney for negligent examination of the seller's title to the land, where a mortgage application signed by the mortgagors advised in conspicuous language that the bank's attorney would represent its interests and that the mortgagors might retain their own attorney to represent them if they wished to do so.  [63-66]

Mortgagors were precluded from recovery against a mortgagee bank for its alleged negligent misrepresentation that a real property title examination by the bank's attorney had revealed no irregularities where the mortgagors made no inquiry with respect to the condition of the title, nor did the bank make any representation to the mortgagors with respect to the status of the title examination or the sufficiency of the title prior to the closing.  [66-68]

CIVIL ACTION commenced in the Superior Court on April 12, 1978.

---

[1] Penelope O. Page.

[2] The Cape Cod Five Cents Savings Bank.

The case was heard by *Dolan, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Peter M. Lauriat (James H. Wexler* with him) for the plaintiffs.

*Erik Lund (H. Sarkis Terkanian* with him) for Charles E. Frazier, Jr.

*Richard J. Cain* for Cape Cod Five Cents Savings Bank.

LYNCH, J.  The plaintiffs appeal from an adverse decision on the merits of their claims of negligent misrepresentation against defendants Attorney Charles E. Frazier, Jr.,[3] and the Cape Cod Five Cents Savings Bank (bank), which retained Frazier to perform a real property title examination on property being purchased by the plaintiffs.  A judge of the Superior Court, who heard the case without a jury, dismissed the complaint after making comprehensive findings of fact and rulings of law, summarized below.[4]  We granted the plaintiffs' motion for direct appellate review.  We affirm the judgments.

The plaintiffs, husband and wife, purchased a house in Wellfleet in 1964.  Beginning in 1967, the plaintiff Robert G. Page (Page) sought to ascertain the ownership of an abutting, unimproved parcel of slightly over 1.1 acres; Page was interested in acquiring the land primarily for protection and reasons of privacy, as well as for investment purposes.[5]  In November, 1972, Page entered into an agreement to purchase the parcel for $14,500, from heirs of Lorenzo Dow

---

[3] Because of the view that we take of the case it is not necessary for us to decide the issues raised by the defendant Frazier.

[4] The trial judge also dismissed on the merits a claim of breach of warranty against the bank, and dismissed four other counts of the plaintiffs' complaint alleging violations of G. L. c. 93A, G. L. c. 168, § 34, and breach of Frazier's fiduciary duty to the bank.  Only the dismissals of the negligent misrepresentation claims have been appealed.

[5] The plaintiffs brought their action jointly as the subject parcel was taken by them as tenants by the entirety.  The trial judge found that all relevant evidence was submitted by Robert G. Page singularly.  We therefore adopt, where appropriate, the judge's reference to the plaintiffs as "Page."

Baker (sellers). For many years the Baker family had owned and conveyed land in Wellfleet extensively. Page applied to the bank for an $8,700 mortgage loan on November 21, 1972. The bank's mortgage application form included the following language: "(1) The responsibility of the attorney for the mortgagee, is to protect the interest of the mortgagee, notwithstanding the fact that (a) the mortgagor shall be obligated to pay the legal fees of said attorney, and (b) the mortgagor is billed for such legal services by the mortgagee. (2) The mortgagor may, at his own expense, engage an attorney of his own selection to represent his own interests in the transaction."[6]

Page's application was approved on November 22, 1972. Thereafter the bank retained Frazier, an experienced conveyancing attorney, and a vice-president and trustee of the bank as well, to certify the title to the property and to draft the necessary legal instruments. The judge found that it was the bank's practice at that time to require an attorney so retained to certify a good, clear, marketable title. The bank also requested from the sellers' attorney, and received on or about December 8, 1972, a general list of title references to deeds, probate decrees, and wills to assist Frazier in his examination of the title. In February, 1973, the sellers' attorney forwarded to the bank a proposed deed without title references. When executed ultimately in April, 1973,

---

[6] The plaintiffs have noted the use of this language, which appeared on the application for a mortgage loan on unimproved land, and which the judge termed as "statutory." General Laws c. 184, § 17B, inserted by St. 1969, c. 423, required the language to be printed in large type only on applications for loans "on real estate consisting of a dwelling house with accommodations for four or less separate households and occupied or to be occupied in whole or in part by the obligor on the mortgage debt." By St. 1972, c. 547, § 2, approved June 29, 1972, and in effect at the time of Page's application, a portion of the language required to appear on application forms was deleted. As the judge noted, St. 1972, c. 547, § 1, also amended G. L. c. 93, by inserting § 70, which provided for limited liability of a bank's attorney to a borrower paying the attorney's fee, subject to the same dwelling and occupancy conditions contained in c. 184, § 17B. The judge ruled that G. L. c. 93, § 70, had no application to the case at bar.

the quitclaim deed from the sellers to the plaintiffs was in the same form as the proposed deed. The title references in the December 8 communication from the sellers' attorney were photocopied and appended to the quitclaim deed and were recorded with it, on April 17, 1973, by Frazier, or at his direction. In his title examination Frazier had also relied on five separate survey plans of abutting owners and an unrecorded survey plan prepared in 1926 which, upon his research, yielded a reference to a deed to Lorenzo Dow Baker in 1900. Frazier searched that chain of title from 1926 onward. The 1900 deed, however, had no connection with the subject locus, and the property which it described had been conveyed out in 1909. A survey plan prepared for the sellers in January, 1973, and available to Frazier during his examination, referred to a 1932 deed which the parties stipulated during trial did not describe the subject locus.

The judge found that Page was not "particularly conversant with the intricate elements or ramifications of title examinations. However, Robert Page [was] a high-level executive possessing concomitant intelligence, ability and knowledge of business transactions. [He had] both purchased and sold real property for his personal use on a number of occasions prior to the transaction in issue." Page had engaged Frazier in 1967 to review his will and had from time to time inquired of Frazier as to possible real estate sites in Wellfleet. In purchasing property prior to 1972, Page had retained another attorney.

With respect to the instant transaction, in addition to the mortgage application form, the following documents involving Page or Frazier were in evidence: (1) a letter from Frazier to Page, dated March 3, 1973, requesting the plaintiffs' signatures on an enclosed proposed mortgage deed, mortgage note, and disclosure form showing a bank attorney's charge of $125 for recording and for title certification, payable by the plaintiffs;[7] (2) a letter from Page to Frazier,

---

[7] Page was neither billed for this charge nor did he pay it. This fact, however, would not preclude a finding that an attorney-client relationship existed. See *Fort Myers Seafood Packers, Inc.* v. *Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. 1967), cert. denied, 390 U.S. 946 (1968).

dated March 6, 1973, indicating that all forms forwarded on March 3 had been signed and were being returned; (3) a letter from Page to Frazier, dictated on March 28, 1973, enclosing a check for the balance of the purchase price, and adding: "I realize that my check is not certified but I thought it would clear the bank before April 2 when I am to close this transaction officially. . . . I would appreciate it very much if you would have the deed properly recorded for me. I will not be represented by an attorney in this transaction"; (4) a letter from Frazier to a vice-president of the bank, dated April 19, 1973, certifying that he had examined the record title to the parcel and had recorded the mortgage note on April 17, 1973, also stating that "[t]itle at the time of said recording was free and clear of any and all encumbrances of record," and requesting that a check for the mortgage loan proceeds be forwarded "payable to me as Attorney for the Pages." The bank assumed this letter indicated a good, clear, marketable title. A copy of the letter was sent to Page by the bank. In July, 1974, Page entered into an agreement of first refusal on the parcel with Stanford and Dorothy Ross. In December, 1975, the Pages and the Rosses executed a purchase and sale agreement. When the prospective buyers' attorney was unable to find good record and marketable title, Page contacted Frazier, who attempted without success to obtain a release of the Rosses' right of first refusal on the parcel. An attorney subsequently retained by the bank and a title researcher engaged by Page's attorney could not find title in the plaintiffs from the reference on their quitclaim deed. The title researcher determined that the deed reference upon which Frazier had relied did not convey the subject locus as a matter of record. The plaintiffs then commenced this action against Frazier and the bank.

The judge found that no record title had been established in the plaintiffs and that no good, clear, marketable title in them was ascertainable, based on Frazier's examination. She further found that, although the plaintiffs had shown by a fair preponderance of the evidence that Frazier was negligent in the performance of his title examination, they

had failed to show the existence of an attorney-client rela-
tionship between them and Frazier.[8]  As she found that Fra-
zier was an independent contractor retained by the bank to
represent its interests, the judge declined to impute his neg-
ligent performance to the bank, which she found had neither
expressly nor impliedly warranted title to Page.  On appeal,
the plaintiffs argue that an attorney-client relationship did
exist between Frazier and them; that even if such a relation-
ship did not exist, their action for negligent misrepresenta-
tion against Frazier should not be barred; that Frazier's
negligence must be imputed to the bank; and that the bank
negligently misrepresented to them the sufficiency of title to
the parcel.

We consider first the plaintiffs' contention that there is a
statutory basis for their claim against Frazier.  We recog-
nize that the Legislature has modified the common law, to a
certain extent, through the provisions of G. L. c. 93, § 70.
As enacted by St. 1972, c. 547, § 1, and in effect at the time
of the present transaction, § 70 provided in material part:
"Whenever, in connection with the granting of any loan or
credit to be secured by a mortgage on real estate improved
with a dwelling designed to be occupied by not more than
four families and occupied or to be occupied in whole or in
part by the mortgagor, the mortgagor is required or agrees
to pay or to be responsible for any fee or expense charged or

---

[8] The judge specifically found: "Despite the one statement to the [b]ank
at the conclusion of the transaction wherein Frazier referred to himself as
the 'Attorney for the Pages,' I find that the only express contract between
the plaintiff and Frazier was relative to the recording of the deed.  As
Frazier was representing the bank, I find no privity of contract between
Page and Frazier nor any attorney-client relationship.

" . . . .

"As reflected in my 'Findings,' the plaintiff has not proven by a fair pre-
ponderance that an implied attorney-client relationship came into exist-
ence."  The judge properly recognized that, in view of her ultimate con-
clusion, a motion to dismiss could have been granted on the negligence
claims.  To avoid the possible necessity of a retrial, the judge made find-
ings with respect to negligence and damages.  While we do not pass upon
the judge's finding of negligence, we assume that finding was correct for
the purposes of determining the questions before us.

incurred by any attorney acting for or on behalf of the mort-
gagee, the mortgagor or his attorney shall be given a copy of
any certification of title to the mortgaged property rendered
by the mortgagee's attorney, and such certification shall be
deemed to have been rendered for the benefit of the mortga-
gor to the same extent as it is for the mortgagee." The Leg-
islature has twice amended § 70, most recently in 1980, and
has left unchanged the class of mortgagors protected by the
statute. The plaintiffs urge us to extend the principle of
G. L. c. 93, § 70, to the case before us. We can find, how-
ever, no suggestion or implication in the clear language of
the statute that it is intended to be applicable to purchasers
of unimproved land. The judge correctly declined to apply
G. L. c. 93, § 70, for the benefit of the plaintiffs.

We turn next to the plaintiffs' argument that an attorney-
client relationship existed between them and Frazier. Al-
though they have not specifically contended that the judge's
finding of no express or implied attorney-client relationship
is unsupported by or contrary to the evidence, we consider
their argument in that light. Under Mass. R. Civ. P. 52 (a),
365 Mass. 816 (1974), a judge's finding is not to be set aside
"unless clearly erroneous, and due regard shall be given to
the opportunity of the trial court to judge of the credibility
of the witnesses." We apply this standard both to findings
of subsidiary facts and to ultimate findings. *Freyermuth* v.
*Lutfy,* 376 Mass. 612, 615 (1978). *Marlow* v. *New Bedford,*
369 Mass. 501, 508 (1976).[9]  See J.W. Smith & H.B. Zobel,
Rules Practice § 52.7 (1977). Whether an attorney-client
relationship existed between Frazier and the plaintiffs was a
disputed issue to be resolved by the trier of fact. See *De-
Vaux* v. *American Home Assurance Co.,* 387 Mass. 814, 818
(1983); R.E. Mallen & V.B. Levit, Legal Malpractice § 659
(2d ed. 1981). Where, as here, oral evidence on the issue is
conflicting, "we must give full recognition to the advantage
possessed by the trial judge, who saw and heard the witness-

---

[9] The plaintiffs do not question the legal standard applied by the judge
to the facts found. See *New England Canteen Serv., Inc.* v. *Ashley,* 372
Mass. 671, 675 n.3 (1977).

es." *Olsson* v. *Waite,* 373 Mass. 517, 521 (1977), quoting *Goddard* v. *Dupree,* 322 Mass. 247, 248 (1948). *Astravas* v. *Petronis,* 361 Mass. 366, 367 (1972). The judge's finding that no attorney-client relationship was created between Frazier and the plaintiffs is amply supported by the evidence. See *National Merchandising Corp.* v. *Leyden,* 370 Mass. 425, 429 (1976). Such a relationship may be, but need not be, express; the relationship can be implied from the conduct of the parties. See *DeVaux* v. *American Home Assurance Co., supra* at 817-818. See generally R.E. Mallen & V.B. Levit, *supra* § 123. Here, the judge weighed all the evidence, including Page's education and experience, his communications with Frazier, the mortgage application's language relative to the attorney's fee and representation, and Frazier's conduct in making no direct certification at all to Page and in certifying to the bank after the transaction had closed. She concluded, from conflicting evidence, that the plaintiffs had not carried their burden of proving an express or implied attorney-client relationship.[10] Cf. *DeVaux* v. *American Home Assurance Co., supra; Dolan* v. *Hickey,* 385 Mass. 234, 236 (1982). Our review of the entire record does not leave us with "the definite and firm conviction that a mistake has been committed." *Marlow* v. *New Bedford, supra* at 508, quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948).

---

[10] We reject the plaintiffs' argument that an agreement between Frazier and Page that Frazier would properly record the deed (see note 8, *supra*) carried the underlying obligation to "determine whether the instrument accomplished what it purported to do." See *Brandlin* v. *Belcher,* 67 Cal. App. 3d 997, 1001 (1977) ("While neither a retainer nor formal agreement is required to establish the attorney-client relationship . . . , the relationship with respect to a particular transaction is nevertheless required to create the duty of an attorney to act for his client in the transaction" [citation omitted]); *Kurtenbach* v. *Tekippe,* 260 N.W. 2d 53, 56 (Iowa 1977) ("In a legal malpractice action it is not sufficient merely to prove an attorney-client relationship existed with respect to some matters. It is necessary to establish that the relationship existed with respect to the act or omission upon which the malpractice claim is based"). For the same reason we do not accept the evidence of Frazier's prior and subsequent representations of Page as relevant to the instant claim of negligent title examination.

The plaintiffs argue that the absence of an attorney-client relationship should not preclude them from recovering from Frazier for negligent misrepresentation of good, clear, marketable title to the property they wished to purchase. While they cite to us no case wherein a mortgagee's attorney has been held liable to a mortgagor for negligent performance of a real property title examination, the plaintiffs point to a general common law trend permitting recovery by injured nonclients for the negligent conduct of attorneys. Cf. *Lucas* v. *Hamm,* 56 Cal. 2d 583 (1961), cert. denied, 368 U.S. 987 (1962) (lack of privity was not a bar to an action by beneficiaries of a will alleging negligent drafting by the testator's attorney). We do not find the plaintiffs' authorities persuasive here, as we deal with the attorney's liability to another where the attorney is also under an independent and potentially conflicting duty to a client. See generally R.E. Mallen & V.B. Levit, *supra* §§ 79, 80; D.J. Meiselman, Attorney Malpractice: Law and Procedure §§ 6.3-6.5 (1980); Annot., 45 A.L.R. 3d 1181 (1972). See also Attorney Negligence in Real Estate Title Examination and Will Drafting: Elimination of the Privity Requirement as a Bar to Recovery by Foreseeable Third Parties, 17 New Eng. L. Rev. 955 (1982). As the judge noted in the instant case, "It is not only in the matter of items such as prepayment rights, disclosure law, late charge provisions and special mortgage provisions where a conflict of interest could arise if the attorney represented both bank and borrower, but many experienced conveyancers would acknowledge that there is a conflict of interest even with respect to title as there are some title defects which will not make the property unsatisfactory as a security but which would concern a buyer." Compare *Lucas* v. *Hamm, supra,* with *Amey, Inc.* v. *Henderson, Franklin, Starnes & Holt, P.A.,* 367 So. 2d 633 (Fla. Dist. Ct. App. 1979) (allowance of defendants' motion for summary judgment on claims of attorney-client relationship and third-party beneficiary theory upheld where bank's attorneys were alleged by mortgagor to have negligently failed to discover a tax lien on the subject property).

In pressing their claim the plaintiffs rely on our decision in *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497 (1967), wherein we held the lack of a contractual relation was not a bar to recovery by a general contractor for negligent performance of plot preparation by a civil engineer, where both were under separate contracts with a real estate developer. There, we reversed a directed verdict which had favored the defendant where he "was under contract with the owner [developer] to perform professional services, where the plaintiff was under another contract with the owner which contemplated reliance on those services, where the identity of the only possible plaintiff and the extent of his reliance were known to the defendant, and where damages [were] not remote." *Id.* at 501. The plaintiffs here urge that their case presents an analogous situation because: (1) Frazier was under contract to examine and certify title for the bank; (2) Frazier knew that the plaintiffs were the prospective purchasers and that they would not be independently represented in the transaction; (3) damages to the plaintiffs, contingently found by the judge to include their down payment, mortgage and tax payments to date, and lost profits, were ascertainable and foreseeable.

We decline to reverse the trial court's judgment on the basis of our holding in *Craig*. While that decision is an example of our recognition that tort liability may exist in the absence of privity of contract, see *McDonough* v. *Whalen*, 365 Mass. 506 (1974); *Carter* v. *Yardley & Co.*, 319 Mass. 92 (1946), recovery under the principles of *Craig* is limited to instances "where the defendant knew that the plaintiff would rely on his services." *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982). See *Capitol Indem. Corp.* v. *Freedom House Dev. Corp.*, 487 F. Supp. 839, 842 (D. Mass. 1980); *Anthony* v. *Vaughan*, 356 Mass. 673, 675 (1970). See also *Markell* v. *Sidney B. Pfeifer Found., Inc.*, 9 Mass. App. Ct. 412, 444 (1980), quoting *Broomfield* v. *Kosow*, 349 Mass. 749, 755 (1965) ("The catalyst . . . is the defendant's knowledge of the plaintiff's reliance upon him"). The present plaintiffs signed a mortgage application,

conspicuous upon which was the bank's cautionary advice that its attorney would represent its interests, and that the plaintiffs might retain their own attorney to represent their interests. Because of what she termed this "strong exculpatory language," the judge concluded that the plaintiffs were not "*entitled* . . . to rely upon the defendant's performance." On this basis, the judge distinguished the present case from our holding in *Craig, supra.* The plaintiffs protest that the term "entitlement" is not found in *Craig,* and that the proper test for us to apply is whether the plaintiffs "had a contract with the [b]ank which 'contemplated reliance' on Frazier's services." We hold that they did not. In *Craig,* the defendant knew "that the purpose of the staking [of the owner's property] to be performed by the defendant's field force was so that the plaintiff contractor could build the roads." We referred to that defendant's performance as having a "precise purpose," which, together with his knowledge of the plaintiff's identity, "eliminate[d] any objection based upon unlimited liability." *Craig* v. *Everett M. Brooks Co., supra* at 500. In the case at bar, Frazier's contract with the bank was exclusively and expressly for the benefit and protection of the bank. Quite conceivably, the bank's interest could have differed materially from the plaintiffs' and the plaintiffs have not shown that they knew what type of certification the bank would require of Frazier at the time they claim reliance upon his performance. Nor do we think they have shown that Frazier could foresee their reliance from a letter dictated by Page five days before he expected the transaction to close, in which he informed Frazier that he was not represented by an attorney.

We also agree with the judge that this case does not come within the ambit of the *Craig* decision. This is not to say that an attorney should be absolutely insulated from liability to nonclients, or that, in a proper case, a nonclient alleging negligence against an attorney would be foreclosed under the *Craig* principle of foreseeable reliance.[11] See

[11] In such a case the trier of fact would not be limited to applying the criteria suggested in the *Craig* decision, but could weigh the same factors

*Beecy* v. *Pucciarelli*, 387 Mass. 589, 597 (1982). The plaintiffs here, however, must be charged with the bank's explicit notice that they should not rely on Frazier's performance, and the notice must be accorded some legal effect on the issue of foreseeability. See *McLaughlin* v. *Exchange Trust Co.*, 272 Mass. 158, 159-160 (1930). The judge noted that Page's belief "that Frazier's role as the [b]ank's attorney in searching the title was representative of his interest as well . . . is not unusual . . . when a bank requires the borrower to pay the attorney's fee." Inherent in such a belief is the surmise that the client's interest is identical to the nonclient's. "However, this is a calculated risk, and if it proves to be unfounded, the buyer has no claim that the lawyer violates a duty owed to him." *Amey, Inc.* v. *Henderson, Franklin, Starnes & Holt, P.A.*, 367 So. 2d 633, 635 (Fla. Dist. Ct. App. 1979). Where, as here, a nonclient takes the chance that the client's interests are in harmony with his own, and does so in the face of an express warning that the interests may differ, his claim of foreseeable reliance cannot be rescued simply because, in retrospect, the interests are shown not to have differed. The principle which allowed recovery in *Craig* is not insurance for a plaintiff's conscious decision, after disclosure, to elect the riskier path.

The plaintiffs also seek recovery from the bank for its alleged negligent misrepresentation that Frazier's title examination had revealed no irregularities. In support of this claim the plaintiffs seek to bring their case within our decision in *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1 (1982). This reliance is misplaced. In *Danca*, the plaintiffs seeking a mortgage loan from the defendant bank were told by its mortgage officer and vice-president that the bank required a plot plan for which the plaintiffs were charged, to assure itself that the location of their house on its lot (within a real estate development) was in compliance with the town's zoning by-law. The bank ordered the plan from a firm of engi-

as are considered in determining whether an express or implied attorney-client relationship exists. In the present case, the judge resolved the particular circumstances against the plaintiffs.

neers, and received it four days prior to the closing of the transaction. The mortgage officer was present at the closing and was asked for a copy of the plan by the plaintiffs, who wished "to satisfy themselves that the house was correctly located." He responded that the plan (later discovered to reveal by-law violations) "was not in the file but would be sent to the plaintiffs." *Id.* at 4. Based upon the trial judge's finding that the bank was negligent in failing to disclose the plan, for which the plaintiffs had paid and "which the bank had in its possession at the time of the closing," we allowed recovery from the bank on the ground of negligent misrepresentation. *Id.* at 7-8. We emphasized the importance to our decision of the defendant's "conduct and words" and "response to the plaintiffs' inquiry," holding it sufficient "that the representation was reasonably understood as a *statement that the bank employees had looked at the plan and found no problems*" (emphasis supplied). *Id.* at 9. By contrast, the defendant bank here did not have possession of Frazier's certification of title until after the property and mortgage deeds had been recorded. Page testified that he telephoned a vice-president of the bank to inquire whether his loan application had been approved, and that during the conversation he said that he "would be using the bank's attorney, . . . would not be using an attorney [because] it was a simple transaction . . . [and he] saw no sense in employing two attorneys to do the same job, or words to that effect." Beyond this testimony, the record does not show that the plaintiffs made any inquiry with respect to the condition of the title, nor does it show that either defendant made any representation whatsoever to the plaintiffs with respect to the status of the title examination or the sufficiency of the title prior to the closing. In the absence of some evidence of affirmative conduct on the part of the bank, there could be no reasonable understanding or reliance by the plaintiffs at the time the plaintiffs would have had to rely on such conduct, i.e., before they closed the sale. See *id.* at 8. It follows that there could be no knowledge of reliance by the bank. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982).

The evidence supports the judge's finding of "no express or implied warranty on the part of the [b]ank to Page relative to the title of the locus." Since there was no evidence of any representations on behalf of the bank to Page, this finding also precludes recovery on the basis of negligent misrepresentation.

On our view that this case presents no demonstrated duty by Frazier or the bank to the plaintiffs with respect to performance of the title examination, the plaintiffs' arguments advancing liability on the theory that Frazier was an employee or agent of the bank are unavailing.

*Judgment affirmed.*