Agnes, A.J.
The underlying claim that gave rise to this motion is one of legal malpractice, filed by plaintiff Patricia Nickerson, against defendant Barbara Walsh.[1] Plaintiff alleged that Walsh was negligent in performing legal services in connection with an attempted refinancing of property owned at the time by her husband Donald Nickerson, (hereafter “Nicker-son”), and that this negligence caused Nickerson to lose the properly. The defendant maintains that she is entitled to summary judgment because she was hired by the lender for the refinancing closing and that therefore she owed no duty to the plaintiff in this case. Plaintiff contends that she was owed a duty based on Nickerson’s foreseeable reliance on defendant’s services. For the reasons discussed below, defendant’s motion for summary judgment is DENIED.
BACKGROUND
The essential facts are not in dispute. In October of 1997, Fairbank Mortgage Corp. (hereafter, “Fairbank”), agreed to extend financing to Nickerson relative to his property in Wakefield, Massachusetts. Fairbank hired defendant Walsh as its counsel for the closing. Walsh in turn hired First American Title Insurance Company to conduct the closing in Virginia, as Donald Nickerson was living in the D.C. area at that time. Before the scheduled closing was to take place, BankBoston, the current mortgage holder on the property, had begun foreclosure proceedings against Nickerson. A foreclosure sale was scheduled for May 21, 1998. The closing was scheduled for May 19, 1998.
Walsh was aware of the tight deadline and the need for a timely pay off to BankBoston. Walsh acknowledged in her deposition that she expected that the refinancing could be accomplished in time to be able to discharge the BankBoston mortgage on Nickerson’s property. See Walsh Deposition at 102-03. In furtherance of the expectation that the funds would end up with BankBoston in time, Walsh sent the Nickerson closing package to Julie Monteverde, a closing agent for First American who was to conduct the closing, including a pre-paid Federal Express envelope to be used to ensure that the completed closing documents would arrive in her office the next morning, on Wednesday, May 20th. See Exhibit 6.
Prior to the closing, Nickerson signed three documents provided to him by Fairbank, the lender. The first, the “Notice of Consumers’ Right To Counsel,” *3 stated in relevant part: “As an applicant for a mortgage loan, you should be aware that: (1) Our attorney does not represent you. (2) You may have legal interests that differ from ours ...” Exhibit 3. The two other documents, “Disclosure to Massachusetts Loan Applicants” and “Mortgage Lender Disclosure Required by the Attorney General’s Consumer Protection Regulations,” both included language suggesting that the borrower may and should consult a lawyer of his own to protect his interests, and that “the responsibility of the attorney for the Lender is to protect the interest of the lender.” Exhibit 4 and Exhibit 5.
Defendant Walsh did not attend the closing, nor did she ever meet or communicate with Nickerson. Julie Monteverde, a closing agent for First American, conducted the closing. The closing stumbled in its first stages, with Nickerson refusing to sign because of some perceived discrepancies with the lender’s figures. Nickerson actually left the office at that time, but returned later in the day to complete the closing as originally intended. The papers were sent to defendant’s office by overnight mail. Unfortunately, when these documents were received by defendant’s office the next day, the paralegal opened the package without reviewing the documents, so that no check was ever done to determine if the closing was in fact accomplished. BankBoston was never paid, and the foreclosure sale took place, resulting in a third party purchasing the property. Nickerson lost the property.
DISCUSSION
Defendant Walsh has moved for summary judgment under Mass.R.Civ.P. 56 on the grounds that there existed no attorney-client relationship between herself and'Donald Nickerson, and that, therefore, she owed no duty to the plaintiff as a matter of law. Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
Even when there is no attorney-client relationship between the parties, an attorney may owe a duty of reasonable care to a nonclient. “An attorney owes a duty to nonclients who the attorney knows will rely on the services rendered.” Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 522 (1989). Plaintiff argues that such a duty can be established here as defendant Walsh admitted in her deposition that she was solely responsible for recording the mortgage executed at the closing, and for discharging the outstanding mortgages on the property. Plaintiff maintains that this evidence constitutes the type of “foreseeable reliance” that allows recovery in spite of the lack of a contractual relationship between the parties, “where the defendant knew that the plaintiff would rely on [her] services.” Page v. Frazier, 388 Mass. 55, 63-64 (1983).
Defendant argues that it was clear that she represented the lender, and that Nickerson was on notice that she did not represent him with respect to the refinancing transaction. Because Nickerson signed the documents provided by the lender, giving him notice that its attorney would represent its interests, this type of explicit notice, defendant contends, “must be accorded some legal effect on the issue of foreseeability.” Page, 388 Mass, at 66.
Although it is undisputed that Nickerson did sign the lender’s disclaimers, an issue remains over whether this type of notice was sufficient and/or should be extended to cover the transaction that is the subject of the litigation heredefendant's failure to act to obtain and record a discharge of the first mortgage to forestall the impending foreclosure on plaintiffs property. Similarly, plaintiffs claim that defendant knew or should have known that Nickerson was relying on her to facilitate the refinancing in the face of the impending BankBoston foreclosure creates a disputed factual question relative to the issue of whether defendant Walsh owed a duty to the plaintiff in this case.[2]
At oral argument, counsel for plaintiff correctly pointed out that while it may be clear to a borrower that the lender’s lawyer represents the lender with regard to the legal and financial issues at the closing, this may not hold true with regard to post-closing events such as the timely recording of the refinancing loan and the discharge of the mortgage. Certainly where time is of the essence and the lender’s attorney effectively makes it known to the borrower that she will complete these crucial post-closing tasks, foreseeable reliance may arise. The need for clarification with regards to the role of the lender’s attorney in the post-closing events may be greater in a case such as this where the lender’s attorney, here defendant Walsh, is represented by an agent and is not personally present at the closing. Indeed, it appears relevant that in this case Fairbank, the lender, actually acknowledged that had it known that an attorney closing loans for Fairbank was using a closing agent that was not explaining the closing documents to the borrowers, it would consider discontinuing the use of this attorney for closing loans. See MacDonald deposition at 134.
For a nonclient to establish liability for an attorney’s negligence, the nonclient plaintiff must establish that the attorney knew she was being relied upon by the nonclient to perform the services at issue, and that these services would not potentially conflict *4 with the duty the attorney owed to his or her client. Lamare v. Basbanes, 418 Mass. 274, 276 (1994). This is not a case where plaintiff was simply relying on the lender’s attorney with respect to the legal and financial issues that collectively make up what is referred to as a real estate closing. For the refinancing to have had any meaningful effect, Walsh needed to pay off the BankBoston mortgage immediately after the closing so as to prevent the foreclosure sale from taking place.
Although a duty is less likely to be imposed “where the attorney is under an independent and potentially conflicting duty to a client,” Page, 388 Mass, at 63-64, the lender and Nickerson, the borrower, shared an interest in this particular post-closing transaction.[3] Knowing that she could not represent Nickerson because between potential adversaries the lawyer can have only one loyalty, Walsh could nonetheless owe a duty of care to Nickerson because she did know that he was relying on her to perform the purely ministerial act of promptly recording the mortgage. See Kirkland Construction Co. v. James, 39 Mass.App.Ct. 559, 562 (1995). Because this service would not conflict with any duty Walsh owed to her client it may form the basis of Walsh’s liability to a nonclient.
Furthermore, evidence that Walsh and her agent (Monteverde) had exclusive control over the documents that were necessary to enable one to pay off the note and to obtain and record the discharge of the mortgage supports the plaintiffs theory of liability. Therefore, whether the defendant could have reasonably foreseen plaintiffs reliance on her to perform the services that would have resulted in plaintiff retaining the property raises triable issues of fact that prevent this Court from allowing defendant’s motion for summary judgment at this time.
ORDER
For the above reasons, defendant Walsh’s motion for summary judgment is DENIED.

 Donald Nickerson, before his death, assigned his interest in this litigation to his wife, Patricia, the plaintiff in this case.

 Another question of fact rests on whether plaintiffs expectation in this case that defendant would take care of the BankBoston mortgage was reasonable in light of evidence that Nickerson walked away from his first opportunity to complete the closing on May 19, 1998. It is unclear whether defendant Walsh was informed of this. If Walsh was aware that initially the closing did not take place as scheduled, in order to recover damages in this case, plaintiff would be required to not only establish foreseeable reliance on the services of the defendant, but that the defendant was aware, or should have been aware, that the transaction was ultimately concluded on the 19th upon Nickerson’s return to the closing agent’s office later in the day.

 While the Supreme Judicial Court has acknowledged that there is a potential for a conflict of interest inherent in the lender/borrower relationship, that Court has not ruled that this is a bar to a finding of reasonable reliance in a claim of legal malpractice between a nonclient and an attorney. See Page, 388 Mass. at 63-65; see also Spinner v. Nutt, 417 Mass. 549, 551 (1994). In the circumstances of this case, there is nothing in the nature of the activity that Walsh performed during the post-closing phase of the real estate transaction that created a conflict between her duty to her client the lender, and the interests of the plaintiff; here, both lender and borrower had a shared interest in the prompt recording of the mortgage discharge.