Sweeney, Constance M., J.
INTRODUCTION
The plaintiffs, Patricia J. and John A. Barton (collectively, “the Bartons”), commenced this personal injury action after they were involved in an accident on the Massachusetts Turnpike (‘Turnpike”) while en route to Logan International Airport in Boston (“Logan”). The Bartons assert claims against Marjorie L. Armitage (“Armitage”), the driver of the limousine in which they were passengers; Chauffeurs Limited Inc., d/b/a Michael’s Limousine (“Chauffeurs”), the company they hired to transport them to Logan; Paul Martins individually (“Martins”), owner and operator of Chauffeurs; The Ideal Insurance Agency (“Ideal”), Chauffeurs’ insurance agent; and Arbella Mutual Insurance Co. (“Arbella”), Chauffeurs’ insurance carrier. Through their first amended complaint, the Bartons assert claims for negligence against Armitage (Count I), Chauffeurs (Count II), Martins (Count III), Ideal (Count VII), and Arbella (Count VIII); violations of G.L.c. 93A by Martins (Count IV) and Chauffeurs (Count V); and loss of consortium against Armitage, Martins and Chauffeurs (Count VI). The Bartons also seek a declaration that 49 Code of Federal Regulations §387.00 et seq. apply to this case, requiring Arbella to satisfy any final judgment rendered against Chauffeurs for amounts up to either $1,500,000.00 or $750,000.00 (Count IX). This Court (Velis, J.) allowed motions by Martins and Armitage for leave to file cross claims for indemnification and contribution from Ideal, as well as a motion by Ideal to sever and stay the claims against it and Arbella.
The Bartons have now moved for partial summary judgment on Count IX of the amended complaint, and Arbella has cross moved for summary judgment on Counts VIII and IX. For the following reasons, the Bartons’ motion for partial summary judgment will be DENIED, and Arbella’s cross motion for summary judgment will be ALLOWED.
BACKGROUND
The following material facts are undisputed.
Chauffeurs, Ideal and Arbella are Massachusetts corporations whose principal places of business are within the Commonwealth. Chauffeurs is owned and operated by Martins, who is also a Massachusetts resident. The 2002 Chevrolet Impala Armitage used to drive the Bar-tons to Logan (the “Vehicle”) is part of Chauffeurs’ fleet, is registered and kept in Massachusetts, and is used to transport passengers for hire approximately three times per week. The Vehicle has been used to transport passengers to Logan and to Bradley International Airport in Hartford, Connecticut (“Bradley”) hundreds of times. Though Chauffeurs had been licensed to carry passengers for hire in both interstate and intrastate commerce, the Federal Motor Carrier Safety Administration (“FMCSA”) revoked Chauffeurs’ license to operate as a for-hire carrier of passengers in interstate commerce on June 21, 2004. Chauffeurs’ federal operating authority was not reinstated until July 18, 2007.
*432 On or about July 21,2004, the Bartons hired Chauffeurs to drive them from their home in Sunderland to Logan on July 24, 2004. There, the Bartons planned to board an international flight to Jamaica. The Bartons made their own travel arrangements, and Chauffeurs’ only role was transporting them to Logan. When they hired Chauffeurs, neither of the Bartons were aware of the minimum insurance requirements for limousines.
On July 24, 2004, Armitage, a Chauffeurs employee, picked the Bartons up at their home. At some point while Armitage was driving on the Turnpike, the Vehicle crashed into the rear end of a tractor trailer, spun around, struck a concrete barrier, and came to rest in the break-down lane. The Bartons ultimately obtained alternate transport to Logan, where they were able to board their scheduled flight to Jamaica. The Bartons vacationed in Jamaica for one week.
The Vehicle was insured under Arbella policy number 9993640001. That policy classifies the Vehicle’s radius of operation as “Local,” and identifies Chicopee Savings Bank as the loss payee in the case of damage to the Vehicle. Pursuant to Martins’ request, Ideal procured the policy from Arbella with limits of $100,000.00 per person and $300,000.00 per accident. On May 7, 2004, Arbella filed a Form BMC-9 IX with the FMCSA for Arbella policy number 37408400002. This was another of Chauffeurs’ Arbella policies. Form BMC-9 IX certifies that the insured motor carrier has adequate levels of insurance in place to protect the public, and by endorsing the Form BMC-9 IX, Arbella certified that it would satisfy any judgment rendered against Chauffeurs for amounts up to $750,000.00.
DISCUSSION
Summary judgment is appropriate when the material facts are undisputed and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). If the moving party establishes the absence of a triable issue, the burden shifts to the non-moving party to oppose with specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Here the parlies agree that the material facts are undisputed, however, each argues that those facts entitle it to judgment as a matter of law.
I. The Bartons’ Motion for Partial Summary Judgment
The Bartons argue that there are no genuine issues of material fact regarding their request for a declaration that Arbella is bound by 49 C.F.R. §§387.00 et seq. Title 49 contains the Federal Motor Carrier Safety Regulations (“FMCS Regs.”), and Part 387 relates to minimum levels of financial responsibility for motor carriers. Massachusetts has specifically adopted Parts 382 and 390-97 of the FMCS Regs.[3] See 540 Code Mass. Regs. §14.03. Because it has not adopted Part 387, which applies only to “for-hire motor carriers transporting passengers in interstate or foreign commerce,” 49 C.F.R. §387.27(a), the FMCS Regs, at issue will only apply in this case if Chauffeurs engages in interstate or foreign commerce.
“Intrastate commerce cannot be distinguished from its interstate counterpart by reference to any precise rule.” Goodwin Bros. Leasing, Inc. v. Nousis, 373 Mass. 169, 175 (1917). “Resolution of the question is dependent on the facts and circumstances of each particular case,” and in making a determination, the court must “look beyond the individual transaction which gave rise to the present controversy” and consider all of the company’s activities within the Commonwealth. Id.
In this case, it is undisputed that: Chauffeurs is a Massachusetts corporation with its principal place of business in Ludlow; Martins and Armitage are both Massachusetts residents; the Vehicle is registered in Massachusetts and is used primarily to transport passengers for hire on the ways of the commonwealth; the Vehicle has been used to transport passengers to Logan and Bradley hundreds of times; the Vehicle’s radius of operation is “Local”; and Chicopee Savings Bank is named on Arbella policy number 9993640001 as the loss payee in the case of damage to the Vehicle. It is also undisputed that the Bartons are Massachusetts residents who were being taken to Logan where they would board an international flight to Jamaica, and that Chauffeurs did not have federal operating authority when the accident occurred.
The undisputed facts demonstrate that Chauffeurs is not engaged in interstate or foreign commerce such that 49 C.F.R §§387.00 et seq. would apply. Chauffeurs’ “main office and principal place of business [are] here. Its ‘corporate functions’ [are] carried on here.” Carlos Ruggles Lumber Co. v. Commonwealth, 261 Mass. 450, 453 (1927). Chauffeurs “(1) is a Massachusetts corporation maintaining its corporate existence here; (2) does [almost] all its [transporting] in Massachusetts as an intrastate activity; and (3) carries on substantial intrastate sales in Massachusetts, as well as many important functions of a local character in administering all its [transportation] operations.” State Tax Comm’n v. John H. Breck, Inc., 336 Mass. 277, 290 (1957) (discussing the Commonwealth’s power to tax corporations engaged in both intrastate and interstate commerce). Chauffeurs’ trips to Logan and Bradley are made “in furtherance of the company’s [intrastate] business and have no other purpose,” Cheney Bros. Co. v. Commonwealth, 246 U.S. 147, 153 (1918), and transporting the Bartons to Logan so that they could catch an international flight does not render Chauffeurs’ operations interstate in nature, because “[t]he effect upon interstate commerce [was] at most incidental and remote.” Atlantic Lumber Co. v. Commissioner of Corps. & Taxation, 292 Mass. 51, 56 (1935).
The fact that Form BMC-9IX for policy number 37408400002 was on file with the FMCSA at the time of the accident does not change this result. Chauffeurs’ federal operating license remained in effect only as long *433 as Chauffeurs continued to satisfy the security requirements set forth at 49 U.S.C.A. §31138 and 49 C.F.R. §387.33. See 49 U.S.C.A. §13906(a)(l). It is undisputed that Chauffeurs’ federal authority was revoked for its failure to satisfy those requirements. Chauffeurs was therefore not authorized to transport the Bartons in interstate or foreign commerce at the time of the accident, and the Form BMC-91X explicitly limits the insurer’s liability “to all losses, damages, injuries or deaths occurring within the authority granted to the Insured by the Commission or elsewhere.” (Emphasis added.)
Because the undisputed facts establish that Chauffeurs engages in intrastate commerce, and therefore that the Form BMC-91X does not apply, Arbella is entitled to an order declaring that 49 C.F.R. §§387.00 et seq. do not apply.
II. Arbella’s Motion for Summary Judgment
Arbella argues that it is entitled to summaryjudgment on the Bartons’ negligence claim because it did not owe the Bartons a duly to refrain from issuing Chauffeurs a policy that provided less than the mandatory minimum ' amount of coverage.[4] Negligence requires a showing that the defendant owed a duty to the plaintiff that it breached, proximately causing the plaintiffs harm. Davis v. Westwood Group, 420 Mass. 739, 743-43 (1995). “(T]he existence of a duty is a question of law,” Jupin v. Kask, 447 Mass. 141, 146 (2006), and the court must “take into account social conditions and contemporary public policy concerns” in deciding whether a duty exists. Commerce Ins. Co. v. Ultimate Livery Serv., Inc., 452 Mass. 639, 646 (2008).
No Massachusetts court has decided what, if any, duty an insurer owes to third parties not to issue a policy which provides less than the mandatory minimum amount of coverage. “In the absence of either a statute creating such a duty or a special relationship recognized by the common law,” Arbella has no general duty “to prevent the harmful consequences of a condition or situation [it] did not create.” Cremins v. Clancy, 415 Mass. 289, 296 (1993) (O’Connor, J., concurring). Thus, Arbella can only be liable to the Bartons if it violated a statutory duty or a duly imposed by the common law.
A. Whether Arbella owed the Bartons a Statutory Duty
“In order to promote and protect the public safety,” vehicles operating within the Commonwealth must comply with the registration requirements set forth in G.L.c. 90. 540 C.M.R. §2.05(1). That chapter not only dictates the manner in which vehicles must be registered, but also sets forth the Commonwealth’s compulsory liability insurance requirements. In deciding whether G.L.c. 90 imposes a duty on Arbella, the “statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result. ” Sullivan v. Brookline, 435 Mass. 353, 360 (2001). “Words are to be accorded their ordinary meaning and approved usage,” and if “the statute is clear and unambiguous, it is conclusive as to the intent of the Legislature.” Welch v. Sudbury Youth, 453 Mass. 352, 354-55 (2009).
An examination of G.L.c. 90 reflects the Legislature’s clear intent to place the burden of compliance on the insured. See G.L.c. 90, §1A (vehicle cannot be registered unless compulsory motor vehicle liability provisions “have been met for such applicant and vehicle”) (emphasis added); G.L.c. 90, §9 (“Aperson convicted of a violation of this section shall be punished”) (emphasis added); G.L.c. 90, §20 (“A person convicted of a violation of any provision of this chapter... shall be punished”) (emphasis added); G.L.c. 90, §34B (“The registrar shall accept a certificate [of insurance] from any person applying for registration of a motor vehicle”) (emphasis added); G.L.c. 90, §34C (“Any person applying for the registration of more than one motor vehicle... may, in lieu of procuring separate policy or bond covering each motor vehicle, furnish a single motor vehicle liability policy or bond covering all motor vehicles owned or controlled by him”) (emphasis added); G.L.c. 90, §34J (“Any person who is convicted of, or who enters a plea of guilty to a violation of this section shall be liable”) (emphasis added). By defining “[p]ersons” as “all persons who own or control such vehicles as owners,” G.L.c. 90, §1, the Legislature explicitly limited liability for violations of G.L.c. 90 to vehicle owners. Thus, G.L.c. 90 does not impose a duty on Arbella to ensure that policies issued by it comply with the Commonwealth’s mandatory insurance laws.
This conclusion is bolstered by the Registry of Motor Vehicles’ motor carrier safety regulations (“RMV Regs.”), set forth at 540 C.M.R. §§14.00 et seq. “[CJommon and contract carriers by motor vehicle, and private carriers of property and passengers by motor vehicle” are subject to the RMV Regs., 540 C.M.R. §14.02, and “[m]otor carriers, drivers, shippers and any other persons subject to 540 CMR [§] 14.00 must comply with the laws and regulations of the Commonwealth.” 540 C.M.R. §14.06 (emphasis added). “[T]he penalties and provisions contained in M.G.L.c. 90, §§2, 9 and 20, shall apply to the enforcement of 540 CMR. 14.00,” 540 C.M.R. §14.05(1), and, as previously discussed, the penalties and provisions contained in those sections apply to any “person.” Moreover, the FMCS Regs., incorporated as RMV Regs, by virtue of 540 C.M.R. §14.03, provide that “[e]veiy employer shall be knowledgeable of and comply with all regulations contained in [the FMCS Regs.] which are applicable to that motor carrier’s operations.” 49 C.F.R. §390.3(a). An “employer” is “any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it,” 49 C.F.R. §390.5 (emphasis added), and therefore Martins and not Arbella, is charged with knowing and complying with the Commonwealth’s minimum financial requirements. Finally, “[e]very driver and employee shall be instructed *434 regarding, and shall comply with, all applicable regulations contained in [the FMCS Regs.],” 49 C.F.R. §390.3(e)(2), and “[wjhenever . . . under this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition.” 49 C.F.R. §390.11 (emphasis added).[5]
Arbella may still be liable, however, if a special relationship between it and the Bartons gives rise to a common-law duty of care. “A special relationship, when derived from common law, is predicated on a plaintiffs reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm." Luoni v. Berube, 431 Mass. 729, 732 (2000). “A plaintiff must be able to show a specific assurance and subsequent reliance to establish special circumstances.” AGA Fishing Group, Ltd. v. Brown & Brown, Inc., 533 F.3d 20, 24 (1st Cir. 2008).
Here, the Bartons may have reasonably relied on Chauffeurs to be adequately insured because the insurance was mandated by law. Flattery v. Gregory, 397 Mass. 143, 147 (1986). They could not, however, have reasonably relied on Arbella to anticipate that Chauffeurs would conduct business in violation of the law. It is undisputed that Chauffeurs specifically requested that the Vehicle be insured at limits of $100,000.00 per person and $300,00.00 per accident, and Arbella owes “a duty to proceed in accordance with [Chauffeurs’] instructions.” Quigley v. Bay State Graphics, Inc., 427 Mass. 455, 460 (1998). The Bartons “have not shown that they knew what type of [insurance] the [Commonwealth] would require of [Chauffeurs] at the time they claim reliance upon [Arbella’s] performance,” and “[i]n the absence of some evidence of affirmative conduct on the part of [Arbella], there could be no reasonable understanding or reliance by the [Bartons] at the time the [Bartons] would have had to rely on such conduct, i.e.,” when they hired Chauffeurs. Page v. Frazier, 388 Mass. 55, 65, 67 (1983). “It follows that there could be no knowledge of reliance by [Arbella].” Id.
Furthermore, Chauffeurs may satisfy its statutory obligations by procuring “an insurance policy or policies issued by a company or companies.” 220 C.M.R. §152.01 (emphasis added). The Bartons could not have expected Arbella, on its own initiative, to determine whether its policy, either by itself or together with another policy Chauffeurs may or may not have obtained, provided the amount of coverage that Chauffeurs was responsible for obtaining. The absence of any duty on Arbella’s part to refrain from issuing a policy to Chauffeurs is fatal to the Bartons’ negligence claim, and therefore Arbella is entitled to judgment as a matter of law.
ORDER
Based upon the foregoing, it is hereby ORDERED that the plaintiffs John A. and Patricia J. Bartons’ motion for partial summaiy judgment on Count IX of the amended complaint against the defendant, Arbella Mutual Insurance Company, is DENIED. It is further ORDERED that the defendant Arbella Mutual Insurance Company’s cross motion for summaiy judgment on Counts VIII and IX of the amended complaint is ALLOWED.

 49 C.F.R. Part 382 regulates controlled substances and alcohol use and testing. Part 390 contains the general FMCS Regs.; Part 391 regulates driver and instructor qualifications; Part 392 regulates commercial vehicle driving; Part 393 relates to the parts and accessories needed for safe operation; Part 394 is reserved; Part 395 controls drivers’ hours of service; Part 396 regulates inspection, repair and maintenance; and Part 397 relates to the transportation of hazardous materials.

As a for-hire motor carrier of passengers operating vehicles seating fifteen people or fewer, Chauffeurs is required by state and federal law to have an insurance policy or policies providing at least $1,500,000.00 in coverage. 49 C.F.R. §387.33; 220 C.M.R. §§152.01, 152.02.

The conclusion that Arbella did not owe a statutory duty to the Bartons to refrain from issuing a policy to Chauffeurs is further supported by the Bureau of Motor Carrier Safety’s (“BMCS”) discussion of the final rules concerning minimum levels of financial secunty required of for-hire motor carriers operating in interstate and foreign commerce. Minimum Levels of Financial Responsibility for Motor Carriers, 46 Fed.Reg. 30,974 (June 11, 1981). In discussing the final mies, the BMCS noted that “paragraphs (d)(1) and (d)(2) of Section 30 of the Motor Carrier Act of 1980 clearly place the responsibility for maintaining adequate amounts of financial responsibility coverage on the motor carrier.” Id. It also concluded that “[c]ontinuing the ICC policy of holding the insurer responsible, irrespective of the motor carrier’s action, would be tantamount to regulating the insurance industry. Clearly, we do not have that authority.” Id.