**MARGARET HALL FOUNDATION, INC., et al., Plaintiffs,**

v.

**ATLANTIC FINANCIAL MANAGEMENT, INC., et al., Defendants.**

Nos. CA 82–2534–T, CA 82–2745–T, CA 82–2962–T, CA 82–3330–T, CA 83–320–T, CA 83–321–T, CA 83–360–T and CA 83–402–T.

United States District Court,
D. Massachusetts.

Sept. 28, 1983.

Fernande R. V. Duffy, Warner & Stackpole, Boston, Mass., for plaintiffs in No. CA 82–2745–T.

Stephen M. Perry, Chaplin, Casner & Edwards, Boston, Mass., for defendants.

Meredith Peterson Tufts, Fine & Ambrogne, Lawrence G. Cetrulo, Burns & Levinson, Boston, Mass., for plaintiffs in No. CA 82–2534–T.

Gerald F. Rath, Herrick & Smith, Boston, Mass., for plaintiffs in No. CA 82–2962–T.

John A.D. Gilmore, Hill & Barlow, Boston, Mass., Judith Welcom, Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant A.G. Becker, Inc. in Nos. CA 82–2962–T, CA 82–3330–T and CA 83–360–T.

Craig E. Stewart, Palmer & Dodge, Boston, Mass., Susan Allison, Spengler, Carlson, Gubar, Brodsky & Rosenthal, New York City, for Draizin in No. CA 82–2962–T.

Harold W. Potter, Jr., Boston, Mass., for plaintiffs in No. CA 82–3330–T.

Charles Dougherty, Craig E. Stewart, Boston, Mass., for A.G. Becker in No. CA 82–3330–T.

Kenneth A. Sweder, Richard Gentilli, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for plaintiffs in No. CA 83–360–T.

## OPINION

TAURO, District Judge.

These eight consolidated securities cases arise out of defendants' alleged mismanagement of plaintiffs' investments. At issue now are defendants' motions to dismiss.

### I.

The parties in the various cases are as follows:

A. *Plaintiffs.*

1) Robert Half of Boston, Inc., Restated Profit Sharing Plan and Trust, and the profit sharing plans of affiliated companies ("Half"). CA 82–2962.

2) Star Textile and Research Incorporated Pension Plan ("Star"). CA 82–3330.

3) The Unitrode Profit Sharing Plan ("Unitrode"). CA 83–321.

4) Margaret Hall Foundation, Inc. and Lexington Cemetery Co., Inc. ("Hall"). CA 82–2534.

5) Regis College ("Regis"). CA 83–402.

6) Ruth Mann Horowitz, et al. ("Horowitz"). CA 82–2745.

7) George Berman ("Berman"). CA 83–320.

8) Charles and Elaine Rosen ("Rosen"). CA 83–360.

B. *Defendants.*

1) Atlantic Financial Management, Inc. ("Atlantic"), Tuton, DiIanni & Draizin, Inc. ("TDD"), Edward Tuton ("Tuton"), and Robert DiIanni ("DiIanni") are the central figures in the alleged fraud and misman-

agement. Atlantic is an investment adviser. TDD is a broker-dealer. Tuton and DiIanni are officers, directors and major shareholders of both TDD and Atlantic. They are the individuals who allegedly had direct contact with the various plaintiffs.

2) Stephen Draizin ("Draizin"), like Tuton and DiIanni, is an officer, director and major shareholder of TDD and Atlantic. Draizin, however, apparently did not have direct dealings with the plaintiffs.

3) A.G. Becker, Inc. ("Becker") is a broker-dealer, and a member of the National Association of Securities Dealers (NASD) and of the New York and American Stock Exchanges (NYSE and AMEX). Becker acted as clearing broker for TDD and Atlantic in their stock transactions for plaintiffs' accounts. Plaintiffs allege that Becker has close ties to Atlantic and TDD.

All defendants are named in each of the cases.

### II.

*Factual Background.[1]*

The plaintiffs in each of the cases entered into investment advisory agreements with Atlantic, whereby Atlantic was to manage their funds with "full discretionary authority." The agreements also disclosed that Atlantic planned to utilize TDD, "its corporate affiliate," as the broker for securities transactions. The plaintiffs' investment goals, as communicated to Atlantic, were capital growth and preservation of capital. In particular, the institutional plaintiffs, by the nature of their investment funds (e.g., retirement fund or school endowment), required a conservative and diversified investment strategy. The individual plaintiffs also stated to Atlantic, Tuton and DiIanni that they wanted safe investments. The Horowitz plaintiffs, for example, told Atlantic that the Horowitz children's trust funds were established from a recent inheritance and represented the only substantial money that they were ever likely to receive.

Despite these investment goals, Atlantic began heavily investing plaintiffs' funds in

---

1. For the purposes of the motions to dismiss, the court must take the facts as alleged by the plaintiffs to be true. The following factual background, therefore, adopts the plaintiffs' allegations.

the stock of a company called AZL Resources, Inc. ("AZL"), a speculative, high-risk oil and gas exploration and development company.[2] At the same time, Tuton, DiIanni and Draizin were trading AZL stock for their own accounts. Eventually, these three began selling off their AZL holdings even though they were purchasing AZL for their clients.

Most of these AZL transactions were handled through Becker as clearing broker. Plaintiffs allege that Becker, therefore, knew that Tuton, DiIanni and Draizin were selling their own AZL stock at the same time as they were buying AZL for their clients and that Becker did nothing about this conflict of interest. Moreover, plaintiffs allege a close working relationship between TDD, Atlantic and Becker. For example, Becker rented part of its office space to TDD and Atlantic. Becker also held a meeting in Boston to promote sales of AZL stock. Finally, plaintiffs contend that Becker was their broker[3] and that in this capacity Becker recklessly disregarded the unsuitability of the AZL purchases for their investment purposes.

### III.

*Section 10(b) Allegations.*

All of the plaintiffs allege violations by all the defendants of Section 10(b) of the Securities and Exchange Act of 1934 (the 1934 Act) and Rule 10b–5 promulgated thereunder. Against Atlantic, TDD and

**2.** Some complaints also allege that, prior to the AZL purchases, Atlantic invested clients' funds in other unsuitable oil and gas development companies' stock, for example, Global Marine, Inc., Natomas Company, Phillips Petroleum Co., and Delta Petroleum & Energy Corp. These claims are similar to the claims involving AZL stock. The AZL purchases are at the core of all of the complaints.

**3.** To support this contention, plaintiffs rely on the fact that Becker sent confirmation slips of transactions directly to them.

**4.** Under Section 10(b) it is unlawful:
To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the

the Atlantic/TDD principals, the claim is for fraudulent activity in purchasing the unsuitable AZL stock and for selling the principals' AZL stock at the same time that stock was being purchased for plaintiffs. Plaintiffs also allege they were defrauded by Tuton and DiIanni's assurances that the AZL stock was not risky, and by Atlantic and TDD's failure to disclose relevant information about the AZL transactions.

With respect to Becker, the plaintiffs allege a fraudulent failure to inform them that the AZL stock was unsuitable and that Atlantic and TDD were trading AZL stock for their own accounts. The plaintiffs also allege that Becker fraudulently handled the AZL transactions when it knew that AZL stock was unsuitable for the investment needs and that Becker aided and abetted Atlantic/TDD's fraudulent activity.

Against Tuton, DiIanni and Draizin, the plaintiffs allege not only the direct 10b–5 claims, but also "control person" liability, under Section 20 of the 1934 Act, for the fraudulent activity of Atlantic and TDD.

### IV.

*The "In Connection With" Defense.*

As to the 10b–5 claims, all of the defendants have moved to dismiss on the ground that none of the alleged fraud took place "in connection with the purchase or sale of any security," and, therefore, the fraud is not actionable under either Section 10(b) or Rule 10b–5.[4] Defendants argue that the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b) (1981).
Rule 10b–5 makes it unlawful:
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5 (1983).

plaintiffs turned over complete investment discretion to Atlantic and, therefore, plaintiffs did not make any investment decisions, let alone any that were induced by defendants' fraud.

Defendants rely primarily on *O'Brien v. Continental Illinois National Bank & Trust Co.,* 593 F.2d 54 (7th Cir.1979). In that case the defendant bank was entrusted with "sole" investment discretion over plaintiffs' pension trust funds which they allegedly mismanaged. The *O'Brien* plaintiffs alleged fraud in the bank's failure to disclose the facts underlying the mismanagement and stated that, if they had known the facts, they would have terminated their investment adviser agreement with the bank. The court held that those allegations of fraud did not state a claim under Section 10(b) and Rule 10b–5, because the alleged fraud was not in connection with the purchase or sale of securities. The court reasoned that the decision as to whether to terminate the investment adviser agreement was not an investment decision involving the purchase or sale of securities.

The facts here are distinguishable from those in *O'Brien.* First, in *O'Brien* the plaintiffs alleged only informational fraud. In the present case, the allegations involve both informational fraud and fraudulent activity. Second, the agreement in *O'Brien* granted the bank *"sole"* discretion over the plaintiffs' account. Here, the agreements granted Atlantic *"full"* discretion. There is a substantive difference between the terms "full" and "sole." In relevant part, *Webster's* defines "full" as "enjoying all authorized rights and privileges."[5] It defines "sole," on the other hand, as "belonging exclusively or otherwise limited to one specified unit or group."[6] In the context of this case, therefore, it is reasonable to infer that the parties used the term "full" as opposed to "sole" because the plaintiffs intended to retain an independent and concurrent right to make investment decisions. In other words, plaintiffs merely authorized defendants to do for them what they could also do for themselves.

In *Kaufman v. Magid,* 539 F.Supp. 1088 (D.Mass.1982), the plaintiffs executed a power of attorney authorizing one of the defendants to deal for them in securities options. In *Kaufman* this court distinguished *O'Brien* on the ground that the plaintiffs in *Kaufman* had not totally relinquished control over their account when they granted a power of attorney to the defendant investment adviser. *Kaufman,* 539 F.Supp. at 1094–95 n. 6. The same distinction found in *Kaufman* applies to this case. The purchases and sales at issue here were, therefore, not too remote to satisfy the "in connection with" requirement.[7]

## V.

*The Becker Defense.*

Becker argues that the 10b–5 claims against it should be dismissed because it was no more than a clearing broker. Becker claims that it simply took and handled orders from TDD, and was not required to do anything more (or less) than faithfully carry out these orders. The plaintiffs' allegations, however, point to a very close relationship between Becker and Atlantic/TDD. For example, Becker rented offices to TDD and Atlantic. Atlantic/TDD used the Becker name to lend credibility to Atlantic/TDD's enterprise. Becker, like At-

---

5. *Webster's New Collegiate Dictionary* 464 (2d ed. 1975).

6. *Id.* at 1105.

7. Even if *O'Brien* were not distinguishable on the facts, it is not clear that the reasoning of *O'Brien* is wholly valid. The language of Section 10(b) and Rule 10b–5 does not require that there be a direct purchaser-seller relationship, only that there be fraud "in connection with" the purchase or sale of any security. The plaintiffs here were purchasers and sellers of securities, even though they did not purchase from or sell to the defendants. And the alleged fraud was connected to these purchases and sales. The "in connection with" requirement should be contrasted with the requirements of a statute such as Mass.Gen.Laws ch. 231 § 85J, which gives a purchaser a cause of action against anyone who "by deceit or fraud, sells personal property . . . ." *See* discussion of ch. 231 § 85J, *infra* at p. 1483. Section 85J does require a purchaser-seller relationship. The 10(b) requirement that fraud be "in connection with" the purchase or sale of securities is not so limited.

lantic/TDD, actively promoted sales of AZL stock. In addition, plaintiffs allege that Becker was their broker. In support of this assertion, plaintiffs point out that Becker sent confirmation slips on transactions directly to them. Plaintiffs allege that, despite this relationship, Becker failed to warn them of AZL's unsuitability as an investment. Further, Becker handled the AZL transactions for plaintiffs and the other defendants, but failed to warn plaintiffs about the apparent conflict of interest involved in the other defendants' trading practices. The allegations here are sufficient to survive Becker's motion to dismiss.

■ In addition to the allegations of direct 10b–5 liability, plaintiffs allege an "aiding and abetting" theory against Becker. Becker argues that this theory cannot stand because (1) no primary violation was shown as the "in connection with" requirement has not been met, (2) Becker had no actual knowledge of any fraud, and (3) Becker did not substantially assist the alleged fraud. As discussed above, the court finds that the fraud alleged here was sufficiently "in connection with" the purchase and sale of securities to state a claim. With regard to Becker's second and third contentions, the plaintiffs allegations raise issues of fact that preclude dismissal of plaintiffs' aiding and abetting claims.

## VI.

### The Draizin Defense.

Draizin apparently had no direct contact with the plaintiffs. The allegations against him, therefore, are based on his position as an officer, director and major shareholder of both Atlantic and TDD, rather than on allegations of direct, affirmative fraud. Draizin argues that, in the absence of evidence that he knew of and actively aided any alleged fraud, he cannot be held liable.

■ Plaintiffs, however, tie Draizin into the alleged fraud in two major respects. First, he is an officer, director and 20% shareholder of both Atlantic and TDD.

Second, Draizin is alleged to have taken some affirmative actions in furtherance of the fraud. For example, Draizin allegedly traded heavily in AZL shares for his own and his family's accounts during the period that Atlantic/TDD was buying AZL shares for the plaintiffs' accounts. Also, Draizin attended private and public meetings in 1981 and 1982 for the purpose of promoting AZL stock to potential investors.

These allegations, and inferences that could reasonably be drawn from them, are sufficient to support charges that Draizin (1) fraudulently withheld material information from the plaintiffs, (2) engaged in fraudulent activity by selling AZL stock for himself and his family while Atlantic/TDD was buying AZL stock for the plaintiffs, and (3) aided and abetted Atlantic/TDD's fraudulent activity by promoting AZL stock and by failing to disclose the fraudulent activity when he had a duty to do so.

■ Further, Draizin may be jointly liable with Atlantic/TDD as a "control person" under Section 20 of the 1934 Act.[8] Section 20 does afford a "good faith" defense, but the burden of proving good faith is on the party asserting that defense. Draizin tries to turn the tables by arguing that plaintiffs' complaint must also negate any possible good faith defense by defendant. The plaintiffs, however, have made sufficient allegations of Draizin's complicity and have no burden of negating a good faith defense by him.

## VII.

### Rule 9(b) Defense.

■ Defendants argue that none of plaintiffs' allegations of fraud are pleaded with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. In a securities fraud case such as this, it is clear that the complaint should "particularize as to each ... of the defendants the activities for which the plaintiff seeks to hold them accountable." *Lerman v. ITB Management Corporation*, 58 F.R.D. 153,

**8.** That section reads in relevant part as follows: Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person.... 15 U.S.C. § 78t(a) (1981).

156 (D.Mass.1973). *See also Chartman v. Barta,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 99,186 (D.Mass. April 4, 1983). Plaintiffs' complaints in these cases meet that standard.

## VIII.

*Violations of NYSE, AMEX and NASD Rules, Section 17(a) of Securities Act, and Mass.Gen.Laws ch. 93A.*

■ All the complaints assert causes of action based on defendants' alleged violations of the rules of the New York Stock Exchange (NYSE), the American Stock Exchange (AMEX) and the National Association of Securities Dealers (NASD). Some of the complaints also allege violations of Section 17(a) of the Securities Act of 1933 (the 1933 Act), and Mass.Gen.Laws ch. 93A (1972). This court has ruled that there is no private right of action for violations of the rules of self-regulatory organizations such as stock exchanges. *Kaufman v. Magid,* 539 F.Supp. at 1098–99. The reasoning of that ruling also applies to NASD rules. The various counts alleging violations of these rules must, therefore, be dismissed.

In *Kaufman,* this court also held that there is no private right of action for alleged violations of Section 17(a). Those counts alleging such violations will be dismissed.

Finally, in *Palace v. Merrill Lynch, Pierce, Fenner & Smith,* CA 80–1831–T (D.Mass. August 3, 1981), this court ruled that no cause of action exists under Mass. Gen.Laws ch. 93A for securities law violations. Counts brought under that statute, therefore, must also be dismissed.

## IX.

*Common Law Claims.*

Among the various complaints are allegations of breach of common law fiduciary duty, breach of contract, common law fraud, aiding and abetting common law fraud, negligent misrepresentation, and negligence. As an initial matter, all defendants ask to dismiss the pendent common law counts if the federal law counts are dismissed. Because some federal counts will not be dismissed, the common law counts may remain as pendent claims.

A. *Draizin Defense to Common Law Claims.*

■ Draizin seeks to dismiss the common law counts against him primarily on the basis that the plaintiffs have not sufficiently alleged that he was directly involved in any wrongful acts. This is essentially the same argument he made with regard to the federal counts against him. As with their federal claims, the plaintiffs have alleged sufficient facts to withstand a motion to dismiss on their claims of common law fraud, breach of fiduciary duty, negligence, negligent misrepresentation for failure to make disclosures, and aiding and abetting fraud.

Draizin raises a question as to whether Massachusetts recognizes a cause of action for aiding and abetting fraud. There is no controlling state court authority on the question. The Restatement (Second) of Torts § 876(b), however, does recognize a cause of action for aiding and abetting a tort. In *Connelly v. Dun & Bradstreet, Inc.,* CA 79–2334–Z (D.Mass. January 22, 1981), the court recognized a possible cause of action for aiding and abetting common law fraud and denied a motion to dismiss the claim. Recognizing *Connelly* as persuasive authority, this court is unwilling to dismiss the claims of aiding and abetting fraud.

■ Two complaints (those by Horowitz and Regis College) also allege breaches of contract by Draizin. Draizin seeks to have these counts dismissed. The investment adviser contracts were between the plaintiffs and Atlantic. Draizin was not a party to the contracts and no basis for piercing the corporate veil of Atlantic has been alleged. The breach of contract claims against Draizin and against the other individuals, Tuton and DiIanni, must be dismissed.[9]

---

**9.** Defendants Tuton and DiIanni filed a motion to dismiss which adopted the arguments made by Draizin in support of his motion to dismiss.

B. *Becker's Defense to Common Law Claims.*

In opposition to the state common law claims against it, Becker essentially repeats its argument that it was simply performing a ministerial function when it engaged in transactions for TDD. For the reasons discussed in connection with the federal counts against Becker, the court finds plaintiffs' allegations sufficient to defeat a motion to dismiss the common law counts.

## X.

*Statutory Claims.*

In addition to the Chapter 93A claims discussed above, some of the complaints state claims under Mass.Gen.Laws ch. 110A (1983) (the Massachusetts securities statute) and Chapter 231 § 85J (1983) (prohibiting the sale of personal property by deceit or fraud).

A. *Chapter 110A §§ 101 and 102.*

▆ The Horowitz and Rosen complaints allege violations of Chapter 110A §§ 101 and 102. These are general anti-fraud provisions similar to Section 10(b) of the 1934 Act and Rule 10b–5. In *Kaufman v. Magid,* 539 F.Supp. at 1099, this court held that there is no private right of action under § 102. This holding also applies to § 101. Chapter 110A § 410(a) does not specifically provide for a private right of action under either section. The claims under §§ 101 and 102, therefore, will be dismissed.

B. *Chapter 110A § 301.*

The Horowitz complaint also alleges a violation of Chapter 110A § 301, under which a private right of action does exist. The § 301 claim, however, is based on the assumption that the investment adviser agreement between the Horowitz plaintiffs and Atlantic is itself a security. Based on this characterization of the agreement, the Horowitz plaintiffs argue that the "security" was "offered" and "issued" to them without being registered, or meeting other state and federal requirements for the issuance of new securities.

▆ In the court's view, the investment adviser agreement cannot be considered a security. In *Kaufman,* 539 F.Supp. at 1096–97, this court held that an adviser agreement is not a security, except to the extent that compensation to the adviser is dependent on profits made by the adviser through investing the client's assets. Such dependency would make the agreement a "common enterprise." The Supreme Court has held that an investment contract involving the investment of money in a common enterprise may be considered a security. *Securities Exchange Commission v. W.J. Howey Company,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In the present case, however, the investment adviser agreement does not tie compensation directly to profits. Instead, the agreement sets compensation at a percentage of value of the client's portfolio. This is insufficient to turn the agreement into a "common enterprise." As a result, the agreement is not a security, and the plaintiffs may not claim under Chapter 110A § 301.

C. *Chapter 231.*

▆ Several Plaintiffs allege a violation of Mass.Gen.Laws Chapter 231 § 85J. That statute provides, "Whoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him." The defendants argue that none of them "sold personal property" to the plaintiffs and, therefore, the defendants cannot be held liable under § 85J. While the Massachusetts state courts have not interpreted this statute, this court recently held that a broker or adviser who purchases and sells securities on a client's behalf cannot be considered a seller of personal property for the purposes of liability to the client under § 85J. *Baghdady v. Sachs,* C.A. 82–2761–T (D.Mass. September 2, 1983), slip op. at p. 5. A broker or adviser sells services, not personal property, to its client.* Section 85J creates a cause of action for a purchaser of personal property against the seller of that property. There is no such purchaser-seller relationship between the plaintiffs and defendants in this case. Those counts relying on § 85J, therefore, will be dismissed.

## XI.

*Other Federal Claims.*

### A. *1933 Act Claims.*

The Horowitz complaint brings claims under §§ 5, 12(1), 12(2), and 15 of the 1933 Act, alleging liability in connection with the registration and issuance of new securities. These claims are based on the theory that the Atlantic investment adviser agreement constituted a new security. This same theory was the basis of the Horowitz plaintiffs' claim under Mass.Gen.Laws ch. 110A § 301. In discussing that claim, above, the court rejected the theory that the investment adviser agreements constituted securities. For this reason, the claims under §§ 5, 12(1), 12(2), and 15 of the 1933 Act must be dismissed.

### B. *Section 9(a) of The 1934 Act.*

■ The Horowitz complaint also brings a claim under § 9(a) of the 1934 Act for manipulation of security prices. Under § 9(a), it is unlawful to manipulate securities prices or to make false or misleading statements for the purpose of inducing someone to purchase or sell securities. One of the Horowitz plaintiffs, Robert Horowitz, was not party to a discretionary investment adviser agreement. Instead, he received direct advice from TDD with respect to his securities purchases. Mr. Horowitz claims that Tuton and DiIanni made false statements to him to induce him to buy AZL stock. He further alleges that Atlantic and TDD manipulated the price of AZL stock, e.g., by propping up the price through purchases of AZL stock with client funds while selling their own AZL stock.

Draizin seeks to dismiss this claim against him on the grounds that (1) there was no violation of § 9(a), and (2) even if there were, Draizin was not a willful, intentional participant in any violation. The court believes there are sufficient allegations to sustain the § 9(a) claim against a motion to dismiss. With respect to Draizin's second argument, regardless of whether Draizin is chargeable with the false statements allegedly made by Tuton and DiIanni, he is alleged to be an active participant in the sale of AZL stock while Atlantic/TDD was

buying for its clients. Combined with Draizin's positions and holdings in Atlantic and TDD, these allegations are sufficient to withstand a motion to dismiss on the § 9(a) claims.

### C. *Investment Advisers Act Claims.*

1. The Rosen complaint alleges that the investment adviser defendants' fraudulent activity violates Section 206 of the Investment Advisers Act, 15 U.S.C. § 80b–6. This is a general anti-fraud provision applicable to investment advisers. The Supreme Court has ruled that there is no private right of action under Section 206. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). This claim, therefore, will be dismissed.

■ 2. The Regis complaint asserts a claim for rescission of its investment adviser agreement and for restitution of fees paid under that agreement, relying on Section 215 of the Investment Advisers Act. The Supreme Court, in *Transamerica,* did recognize a private right of action for rescission of contracts made void by Section 215, and for restitution of fees paid under such contracts. Section 215(b), in relevant part, voids any contract,

> the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter ... as regards the rights of any person who, in violation of any such provision ... shall have made or engaged in the performance of any such contract ....

15 U.S.C. § 80b–15(b) (1981). One "provision of this subchapter" is Section 206, the general antifraud provision. Regis argues that defendants' fraudulent activity violates Section 206, thereby voiding the contract under Section 215 and giving rise to an action for rescission and restitution. Draizin replies that Regis is simply trying to assert a private right of action under Section 206 in contravention of *Transamerica.*

Regis is asserting a Section 215 claim that is limited in relief to rescission and

restitution. That the Section 215 claim is triggered by a Section 206 violation does not convert it into a Section 206 claim. The claim does not seek the wide range of damages and injunctive relief that would be available were there a private right of action under Section 206. Rather, it looks only to the validity of the adviser agreement and, as allowed by *Transamerica*, seeks only to rescind the invalid agreement and recover fees paid thereunder. Thus, the Section 215 claim will not be dismissed altogether.

Draizin also argues, however, that the parties to the adviser agreement were Atlantic and Regis, and that the fees were paid to Atlantic. An action for rescission and restitution, continues Draizin, is thus maintainable only against Atlantic. As this court stated in discussing the various parties' breach of contract claims, no facts have been shown that would justify piercing Atlantic's corporate veil. The action for rescission and restitution, therefore, may proceed only against Atlantic.

### D. *ERISA Claims.*

The pension plan plaintiffs bring claims against Tuton, DiIanni, Atlantic, and, in the Unitrode complaint, against Draizin as well, for violations of duties under §§ 404(a) and 406 of ERISA, 29 U.S.C. §§ 1104(a) and 1106. Draizin seeks to dismiss the Unitrode ERISA claims on the ground that an employee benefit plan is not authorized by ERISA to bring a § 404(a) or § 406 action in its own name. Draizin asserts that ERISA authorizes action only by participants, beneficiaries or fiduciaries of a plan. Draizin relies on *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir. 1983), which dismissed a complaint because it was brought by the plan itself rather than by a participant, beneficiary or fiduciary. Unitrode replies that the *Pressroom* case was wrongly decided, and that the provision of ERISA that authorizes participants, beneficiaries and fiduciaries to sue is not an exclusive provision. In the alternative, Unitrode moves to amend its complaint to add as plaintiffs the plan administrator, a committee of the Unitrode plan, and individual fiduciaries of the plan, i.e., individual members of the plan administrator committee. Without deciding whether the reasoning of *Pressroom* is valid, the court finds that it is in the interest of justice to allow Unitrode's proposed amendment.

Draizin contends that even if the amendment is allowed, he should not be held liable because he cannot be considered an ERISA fiduciary. Under ERISA, a person is a fiduciary with respect to a plan to the extent that he exercises any discretionary authority or control with respect to management of its assets, or renders investment advice for a fee, or has discretionary authority or responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A). Draizin is alleged to be an officer, director and large shareholder of the company managing the Unitrode Plan's assets. These allegations alone are sufficient to raise an issue of fact as to whether Draizin was a fiduciary with respect to the plan. Unitrode's ERISA claims, therefore, will not be dismissed.

### XII.

*Conclusion.*

For these reasons, the following claims will be dismissed:

1. Claims based on a private right of action under NYSE, AMEX or NASD rules;

2. Claims under §§ 5, 12(1), 12(2), 15, and 17(a) of the 1933 Act;

3. Claims under Mass.Gen.Laws ch. 93A; ch. 110A §§ 101, 102, and 301; and ch. 231 § 85J;

4. Claims under § 206 of the Investment Advisers Act;

5. Claims under § 215 of the Investment Advisers Act, except as against Atlantic; and

6. Claims for breach of contract, except as against Atlantic.

In all other respects, the defendants' motions to dismiss will be denied. Finally, plaintiff Unitrode's motion to amend its

complaint to add parties as plaintiffs will be allowed.

An order will issue.