Mary HURLEY, Sumner Woodrow, and Ronald E. Crosthwaite, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, C. William Wester, Robert F. Fredo, Jr., Francis W. A'Hearn, Thomas J. Bagley, Walter E. Bennett, Ernest N. Daulton, Jr., Robert C. Keogh, Ralph Lolli, Jr., J. Parker Rice, Jr., Lester H. Rome, Eugene L. Sorbo, Defendants.

Civ. A. Nos. 88–1940–T, 88–1969–T.

United States District Court, D. Massachusetts.

Aug. 8, 1989.

Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, Mass., for Mary Hurley.

Stanley M. Grossman, Pomerantz Levy Haudek Block & Grossman, New York City, for Sumner Woodrow.

William J. Patton, Robert J. Stillman, David Martland, Ropes & Gray, Boston, Mass., and Rae Schupack Nathan, Regional Counsel, F.D.I.C., New York City, for F.D.I.C.

Stephen R. Delinsky, Evan Slavitt, Fine & Ambrogne, John G. Fabiano, Peter A. Spaeth, Hale & Dorr, Boston, Mass., Sherrie R. Savett, Gary E. Cantor, Lawrence Deutsch, Berger & Montague, Philadelphia, Pa., for C. William Wester.

Thomas Dwyer, Dwyer & Collora, Boston, Mass., for Robert F. Fredo, Jr.

Laura Steinberg, Sullivan & Worcester, Boston, Mass., for Francis A'Hearn.

John H. Henn, Brandon F. White, Foley, Hoag & Eliot, John G. Fabiano, Peter A.

Spaeth, Hale & Dorr, Boston, Mass., for Service Bank For Savings.

## MEMORANDUM

TAURO, District Judge.

This lawsuit is one of a series of cases filed in federal and state court following the disclosure by bank examiners of financial irregularities at the First Service Bank for Savings.[1] The plaintiffs are representatives of a putative class of the bank's shareholders who purchased stock in the over the counter ("OTC") market between December 5, 1986 and August 15, 1988. The defendants fit into five categories: 1) the Federal Deposit Insurance Corporation;[2] 2) C. William Wester, the bank's former President, Chief Executive Officer and Chairman of the bank's board of directors; 3) Robert F. Fredo, Jr., the bank's former Senior Vice President and Senior Lending Officer; 4) Francis W. A'Hearn, the bank's current Senior Vice President, Chief Financial Officer and Treasurer; and 5) members of the bank's board of directors who, as members of the bank's executive or audit committees, signed various disclosure statements.

The complaint alleges that the defendants misrepresented the financial health of the bank by filing quarterly and annual reports with the FDIC that contained misrepresentations and omissions of material facts. Count I of the complaint claims that all the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5. Count II claims that the de-fendants' conduct constitutes common law fraud. Count III claims that the defendants' actions constitute negligent misrepresentation. All the defendants have filed motions to dismiss.

### I.

According to the complaint,[3] the bank made numerous loans which involved bad banking practices. These practices included loans made without sufficient collateral, loans secured by unappraised property or unperfected security interests, extending or renewing loans without reviewing their creditworthiness, rolling loans over instead of placing them on a delinquency status or declaring them in default, and lending money to borrowers for the sole purpose of paying interest due on previous loans. Additionally, the complaint details several loans that were made to Wester and Fredo's business partners, as well as loans made to a real estate trust in which Wester and Fredo had an undisclosed beneficial interest.

During the period of time when the alleged bad lending practices were taking place, the bank issued numerous press releases and filed periodic reports with the FDIC. These reports included such data as the bank's capital to asset ratio, reserve for possible loan losses, amount of delinquent loans, and the bank's procedure for making loans and handling delinquent loans. Plaintiffs claim the financial data contained in these reports was false, because they did not take into account the numerous prob-

---

1. The other cases pending in this court are: *Konstantinakos v. FDIC, et al.,* CA No. 88–2144–T. *Loan, et al. v. FDIC, et al.,* CA No. 89–0251–T. The following related cases are all pending in the courts of the Commonwealth: *Ashey, et al. v. First Service Bank for Savings,* CA No. 89–349 (Worcester Superior Court); *Feehan v. W.N. Investors Inc.,* CA No. 71844 (Fitchburg District Court); *First Service Bank for Savings v. Little, et al.,* CA No. 88–2303 (Worcester Superior Court); *First Service Bank for Savings v. Wester, et al.,* CA No. 88–2292 (Worcester Superior Court); *Fredo, v. First Service Bank for Savings,* CA No. 88–3053 (Worcester Superior Court); *Mason v. Goutzos,* CA No. 88–7088C (Suffolk Superior Court); *Pelletier v. First Service Bank for Savings, et al.,* CA No. 89–0774 (Worcester

Superior Court); *Tiernan, et al. v. Little, et al.,* CA No. 89–0657 (Worcester Superior Court); and *Zocco v. First Service Bank for Savings,* CA No. 88–3188 (Worcester Superior Court).

2. Originally the bank was a defendant in this action. On March 31, 1989 the Massachusetts Commissioner of Banks took the bank over and appointed the FDIC to act as its liquidator. Subsequently, this court allowed the FDIC's motion to be substituted for the bank as a defendant. The FDIC, therefore, stands in the shoes of the bank in this litigation.

3. Because this case comes to the court on defendants' motions to dismiss, all of plaintiffs' allegations are accepted as true.

lem loans that plaintiffs' complaint details. Moreover, the reports failed to disclose the existence of these problem loans and the manner in which the loans had been made and supervised. These misrepresentations and omissions allegedly overestimated the financial value of the bank and underestimated the magnitude of the bank's delinquent loans by millions of dollars.

Defendants make four arguments in support of their motions to dismiss. First, they argue that plaintiffs lack standing, because any injury which has occurred is a claim that belongs to the bank itself, not to the individual shareholders. Second, defendants claim that counts I and II should be dismissed for failure to plead fraud with particularity. Third, defendants claim that reliance has not been adequately plead to support counts I and II. Finally, defendants claim that count III fails to state a claim for negligent misrepresentations. Each of these arguments are addressed *seriatim.*

### II.

■ General principles of corporate law provide that a shareholder may not sue either the corporation or some other wrongdoer if the only injury alleged is a diminution of the corporation's net worth. In such circumstances the corporation is the injured party, and it alone may sue the wrongdoer for the damage caused. *See* 12B W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5907 *et seq.* (1984) ("Fletcher"). Corporate mismanagement, or even fraud perpetrated on the corporation, resulting in lower stock prices cannot form the basis for an individual shareholder lawsuit against the wrongdoer or against the corporation. *See id. See also Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 477–80, 97 S.Ct. 1292, 1302–05, 51 L.Ed.2d 480 (1977) (Rule 10b–5 is not violated by simple corporate mismanagement).

Only where the shareholders themselves have been defrauded, may they sue the wrongdoer. *See* 12B *Fletcher* § 5923.2 ("defrauded purchasers or seller of stock or securities may maintain an action [under Rule 10b–5] ... either individually or as a class action"). That is true even if all the shareholders are victims of the fraud. *Id.*

■ Plaintiffs' complaint alleges more than mere corporate mismanagement. It alleges that the defendants made false statements in the bank's periodic disclosure reports and failed to disclose other material information. These material misrepresentations and omissions are alleged to have caused plaintiffs to buy and sell securities at deceptive prices. The prohibition on individual shareholders bringing a 10b–5 claim based on corporate mismanagement is inapplicable where, as here, there are allegations of material misrepresentations and omissions. *See Green,* 430 U.S. at 474, 97 S.Ct. at 1301 ("As we have indicated, the case comes to us on the premise that the complaint failed to allege a material misrepresentation or a material failure to disclose."). Plaintiffs, therefore, have standing to maintain the instant action.

### III.

Defendants contend that the securities fraud and common law fraud claims should be dismissed for failure to plead their individual involvement in the fraud with particularity. The Federal Rules of Civil Procedure mandate that "the circumstances constituting fraud ... shall be stated with particularity ... [but] [m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). This requirement is especially important in securities fraud cases where the strike suit value of a complaint is high. *See Wayne Investment Inc. v. Gulf Oil Co.,* 739 F.2d 11, 13–14 (1st Cir. 1984).

To satisfy Rule 9(b) a pleading must "specif[y] ... the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 229 (1st Cir.1980). "This interpretation of Rule 9 ... harmonizes the rule with Rule 8, which requires that averments in pleadings be concise and direct, and at the same time ... give[s] adequate notice of plaintiff's claim of fraud." *Id.*

Where multiple defendants are involved, each defendant's role in the fraud must be particularized. *See Margaret Hall Foundation v. Atlantic Financial Management, Inc.,* 572 F.Supp. 1475, 1481 (D.Mass.1983) (Tauro, J.). This requirement serves to place each defendant on notice of what role he is alleged to have played in the fraud. *Id.*

■ The complaint specifies precisely which of the bank's quarterly and annual reports and FDIC disclosure forms are alleged to have contained material misrepresentations and omissions. Specifically, the complaint alleges, *inter alia,* that the bank's 1986 and 1987 annual reports to the FDIC along with quarterly reports for all four quarters of 1987 and the first quarter of 1988 misrepresented the bank's financial condition. *See* First Amended Complaint ¶ 20–24, 26–31. The complaint quotes the figures reported in each instance for the amount of delinquent loans, the bank's delinquency rates, the bank's net worth and its reserves for potential loan losses. Next the complaint details numerous loans which are alleged to have been made in violation of good banking practices, as well as loans that were rolled over to avoid having to report them as delinquent on the books of the bank. *See id* at ¶¶ 36–52. Then, the complaint explains what the true figures would have been on each of the bank's various periodic reports if the bad loans had been accounted for properly. *See id.* at ¶¶ 22, 24, 29, 30 and 31. Finally, the complaint details which of the defendants allegedly signed each of the periodic reports, and avers that each defendant knew of the falsity of the reports, or acted with reckless disregard as to the truth of the contents of those reports. *Id.* at ¶¶ 6 and 67.

Consequently, the complaint adequately pleads the "time, place and content of ... [each] alleged false representation." *McGinty,* 633 F.2d at 229. The only question that remains is whether the complaint has adequately plead each individual defendant's particular role in the fraud. *See Margaret Hall Foundation,* 572 F.Supp. at 1481.

## A. The FDIC

■ As a result of its motion to be substituted as a party in this action, the FDIC stands in the shoes of the bank. Accordingly, if the bank's role in the fraud is sufficiently particularized, the FDIC remains in the case.

The bank's alleged involvement in the fraud was the issuance of various disclosure documents that contained material misrepresentations and omissions. The complaint alleges that the bank, through its officers and directors, knew of the falsity of its own disclosure documents, or acted with reckless disregard of the truth of those documents. *See First Amended Complaint* ¶ 68. While the bank's knowledge of the misrepresentations and omissions is averred generally, that is all that Rule 9 requires. *See* Fed.R.Civ.P. 9(b) ("knowledge ... may be averred generally"). The allegations contained in the complaint are sufficiently particular to apprise the bank of its role in the fraud.

## B. The Directors, Wester and A'Hearn

All of the directors who are defendants in this action are members of the bank's executive or audit committees. During much of the class period, Wester was the bank's President, Chief Executive Officer and Chairman of the bank's board of directors. As such, he was directly responsible for the bank's lending operations as well as the bank's periodic reports to shareholders and to the FDIC. Defendant A'Hearn was the bank's Senior Vice President, Chief Financial Officer and Treasurer during the entire class period.

The complaint alleges that each of these individual defendants signed one or more of the bank's periodic reports knowing of material misrepresentations or omissions in the reports. Specifically, Wester signed the 1986 and 1987 annual reports to the FDIC, along with quarterly reports to the FDIC for the first and third quarters of 1987. A'Hearn signed both annual reports and all the bank's quarterly reports. Each of the director-defendants are alleged to

have signed the 1986 and 1987 annual reports to the FDIC.

These individual defendants argue that they are being charged with fraud not because of something they did, but merely due to their status as officers or directors of the bank. *See Decker v. Massey Ferguson, Ltd.,* 681 F.2d 111, 119–20 (2d Cir. 1982) (outside directors could not be charged with securities fraud merely because they were directors and, therefore, had access to corporate records). Plaintiffs respond that the signatures of these defendants on the bank's alleged fraudulent reports is a sufficient nexus between them and the fraud to satisfy Rule 9(b).

The First Circuit has not yet considered whether an individual's signature on a corporation's allegedly false disclosure forms is a sufficient nexus to charge that person with fraud. Courts from outside this circuit have reached differing conclusions. *Compare Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987) (complaint alleging that directors signed corporate documents satisfied particularity requirement); *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 592–93 (E.D.Mich.1985) (same); *with Hahn v. Breed,* 587 F.Supp. 1369, 1380 (S.D.N.Y. 1984) (allegation that all the trustees caused the false statements to be issued was insufficient to survive a Rule 9(b) motion).

■ This court adopts the view that a person is liable for corporate statements that bear his or her signature. As the Ninth Circuit explained:

> In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*In re Consumers Power Co. Securities Litigation,* 105 F.R.D. at 592–93.

When a complaint links a particular individual to a corporate document that he or she signed, and specifies what is fraudulent about that document, the individual is placed on notice about the nature of plaintiffs' claim and what role that individual is alleged to have played in the fraud. That is all that Rule 9(b) requires. *See McGinty,* 633 F.2d at 229 (Rule 9(b) is meant to give a defendant "adequate notice of plaintiff's claim of fraud."); *Margaret Hall Foundation,* 572 F.Supp. at 1481 (Rule 9 is satisfied when each defendant is apprised of his role in the fraud). Accordingly, the fraud claims in the complaint against the director-defendants, Wester and A'Hearn are sufficiently particular to satisfy Rule 9(b).

### C. Fredo

Defendant Fredo was the bank's Senior Vice President and Senior Lending Officer during much of the class period. Among his duties were the supervision of lending operations and the ultimate approval of many of the bank's loans.

The complaint details Fredo's participation in making various bad loans as well as his actions in concealing the delinquent status of $7,290,000 in loans. *See First Amended Complaint* ¶ 48. Additionally, the complaint alleges that Fredo, along with Wester, failed to disclose that the bank had made loans to his business partners as well as to a real estate trust in which Fredo had a beneficial interest. *Id.* at ¶¶ 36, 38, 39, 43, 49 and 50.

■ Unlike the other individual defendants, Fredo did not sign any of the bank's statements that are alleged to contain material misrepresentations and omissions. Fredo argues that this distinction requires dismissal of the securities claims against him. But, a person does not have to actually sign a misleading statement to be liable for material misrepresentations and omissions contained therein. Fredo was the bank officer directly responsible for supervising the bank's lending operations. As such, he had a duty to disclose all material

facts about the bank's lending practices—especially those in which he was personally involved.

The gravamen of the complaint is that the bank failed to disclose serious lending irregularities in its annual and quarterly reports. As the Ninth Circuit has observed: "In cases of corporate fraud where the false or misleading information is conveyed in ... annual reports ... and other group-published information, it is reasonable to presume that these are the collective acts of the officers." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). That observation is particularly applicable here, where the officer sought to be charged with securities fraud was directly responsible for supervising the lending practices that plaintiffs allege should have been disclosed.

### IV.

■ Defendants contend that the securities and common law fraud counts should be dismissed because the complaint does not adequately plead plaintiffs' actual reliance on the allegedly fraudulent statements. Reliance on claimed misrepresentations and omissions is, of course, a necessary element of securities and common law fraud claims. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206, 96 S.Ct. 1375, 1387, 47 L.Ed.2d 668 (1976).

Plaintiffs seek to satisfy the reliance requirement by pleading "reliance on either the integrity of the market or directly on the statements." *First Amended Complaint* ¶ 69. *See also id.* at ¶ 76. Defendants attack both theories of reliance.

■ In *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 991–92, 99 L.Ed.2d 194 (1988), the Supreme Court explained that actual knowledge of, and reliance on, claimed material misrepresentations and omissions that were publicly disclosed is not necessary where the stock is traded on a free, efficient and well-developed securities market. In such circumstances, a shareholder is entitled to rely on the efficacy of the market to properly evaluate all material information and reflect that infor-

mation in the price of the stock. When a material misrepresentation or omission is made, it operates as a fraud on the market, thus injuring anyone who relies on the market to accurately reflect all relevant information. *Id.*

Defendants contend that the fraud on the market theory cannot substitute for actual reliance where, as here, the stock is traded in the over the counter ("OTC") market rather than on a recognized stock exchange. Many of the fraud on the market cases have involved shares traded on either the New York Stock Exchange ("NYSE") or the American Stock Exchange ("ASE"). *See e.g., Basic*, 108 S.Ct. at 991 n. 25 (citing cases involving both exchanges).

■ The First Circuit has not yet had an opportunity to decide whether the fraud on the market theory may substitute for actual reliance when the stock is traded in the OTC market rather than on a stock exchange. Courts from outside this circuit have reached differing conclusions. *Compare Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 525 (N.D.Ill.1988) (fraud on the market theory applies to OTC stocks); *with Epstein v. American Reserve Corp.*, No. 79–C–4767, 1988 WL 40500, slip op. available on LEXIS (N.D.Ill. April 21, 1988) (fraud on the market theory does not apply to OTC stocks).

This court holds that the principles which undergird applying the fraud on the market theory to stock traded on the NYSE or ASE are equally valid with respect to OTC transactions. Where the stock is traded is not the crucial issue. The important question is whether the stock is traded in a market that is efficient—one that obtains material information about a company and accurately reflects that information in the price of the stock. As the *Harman* Court pointed out:

> While some over-the-counter stocks no doubt trade in a less developed market than some New York Stock Exchange issues, the inquiry in an individual case

remains the development of the market for that stock, and not the location where the stock trades.

122 F.R.D. at 525.

█ The bank issued approximately five million shares of stock. The complaint alleges that the stock was actively traded in the OTC market with a volume of more than 19.3 million shares traded during the class period. *See First Amended Complaint* ¶ 12. That is a sufficient showing of efficiency at this early stage of the litigation to invoke the fraud on the market theory as a substitute for pleading actual reliance.[4]

## V.

█ Lastly, all the defendants argue that the pendent state law claim for negligent misrepresentation, count III of the complaint, should be dismissed for failure to state a claim upon which relief can be granted. In Massachusetts, the tort of negligent misrepresentation requires privity between the parties. Absent privity, plaintiff must prove that the "defendant had actual knowledge of plaintiff's reliance." *Capitol Indem. Corp. v. Freedom House Development Corp.*, 487 F.Supp. 839, 842 (D.Mass.1980) (Zobel, J.). *See also Page v. Frazier*, 388 Mass. 55, 65, 445 N.E.2d 148 (1983) (no recovery because there was no privity between the parties and plaintiff had failed to show actual knowledge of reliance); *Craig v. Everett M. Brooks, Co.*, 351 Mass. 497, 501, 222 N.E.2d 752 (1967) (recovery permitted because "the identity of the only possible plaintiff and the extent of his reliance were known to the defendant."); *Acushnet Federal Credit Union v. Roderick*, 26 Mass.

App. 604, 605–06, 530 N.E.2d 1243 (1988) (recovery permitted where there was a showing of privity between the parties).

█ Plaintiffs' complaint alleges that the defendants negligently made false representations to plaintiffs through various corporate documents and that plaintiffs relied on these representations to their detriment. *See First Amended Complaint* ¶¶ 78–84. The complaint does not allege either privity between plaintiffs and defendants or actual knowledge by defendants of the nature and extent of plaintiffs' reliance on defendants' statements. Accordingly, the complaint does not state a claim for negligent misrepresentation.

An order will issue.

## ORDER

For the reasons set forth in the accompanying memorandum, defendants' motions to dismiss counts I and II of the amended complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), are hereby denied. Defendants' motions to dismiss count III of the amended complaint, pursuant to Fed.R. Civ.P. 12(b)(6), is hereby allowed.

IT IS SO ORDERED.

---

**4.** Defendants' argument that the fraud on the market substitute for actual reliance only applies to the federal securities fraud claim, not the common law fraud claim, is unavailing. While no Massachusetts case has yet endorsed the fraud on the market theory in a common law fraud context, neither has any court rejected that theory. The issue simply has never before been presented for a decision. This court believes that, if the Supreme Judicial Court were faced with the question, it would recognize the fraud on the market theory as a substitute for pleading reliance where a company's stock is traded in an efficient market, regardless of whether the stock is traded OTC or on a recognized exchange. *But see Tolan v. Computervision Corp.*, 696 F.Supp. 771, 772 (D.Mass.1988) (Harrington, J.) (requiring proof of actual reliance for common law fraud while adopting the fraud on the market substitute for 10b–5 claims).