William STEINER, et al., Plaintiffs,

v.

UNITRODE CORP., et al., Defendants.

Civ. A. No. 90–11443.

United States District Court,
D. Massachusetts.

April 13, 1993.

## MEMORANDUM AND ORDER

WOLF, District Judge.

## I. INTRODUCTION

This case is a proposed securities fraud class action. Plaintiff seeks to represent all persons who purchased the stock of defendant Unitrode Corporation. ("Unitrode") from March 2, 1988 until March 16, 1990. The defendants are Unitrode and individual defendants Howard F. Wasserman ("Wasserman"), George M. Berman ("Berman"), and Walter B. Gates ("Gates"), who during this period acted as Chief Executive Officer, Chairman of the Board of Directors, and Senior Vice President and Chief Financial Officer of Unitrode, respectively.

Plaintiffs allege that the defendants violated § 10(b) and 20(a) of the Securities and Exchange Act, 15 U.S.C. §§ 78j(b) 78t(a), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b–5. Complaint, ¶ 64–77. Plaintiffs also allege a pendent state law claim of negligent misrepresentation. *Id.* ¶ 78–83. Plaintiffs contend that over a period of about two years defendants made several false and misleading statements regarding the condition of Unitrode and its earnings prospects in a scheme to manipulate the market price of the company's stock. Because plaintiffs purchased Unitrode stock during that period; they claim that they paid an artificially inflated price, thereby incurring substantial losses. *Id.* ¶¶ 5,76–77. Plaintiffs filed their original complaint in June 1990 and filed an amended complaint ("Complaint") on May 9, 1991.

Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, under Fed.R.Civ.P. 12(b)(6) and for failure to plead fraud with particularity, under Fed.R.Civ.P. 9(b). As described below, the court concludes that plaintiffs have adequately stated a claim upon which relief can be granted for violations of the federal securities laws, and that the plaintiffs have stated their claims with sufficient particularity to withstand a motion to dismiss under Fed.R.Civ.P. 9(b). Accordingly, defendants' motion to dismiss the plaintiffs' amended complaint must be denied. Plaintiffs have failed, however, to state a claim upon which relief can be granted under Massachusetts law. The court, therefore, will grant defendants' motion to dismiss the pendent claims of negligent misrepresentation.

## II. FACTUAL BACKGROUND

For purposes of deciding this motion to dismiss, all the factual allegations of the amended complaint have been accepted by the court as true. *See Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986). Defendant Unitrode is incorporated in Maryland and its principal manufacturing facilities are located in Massachusetts and New Hampshire. Complaint, ¶ 8, 26. Unitrode manufactures electronic components which are sold around the world for a variety of military, data processing, telecommunications, industrial and commercial operations. Complaint ¶ 25. Shares of Unitrode common stock are listed and actively traded on the New York Stock Exchange. *Id.*

Beginning in 1987, Unitrode began to experience serious financial difficulties due to a sharp decline in the profitability of Unitrode's largest business segment, the Semiconductor Products Division. *Id.* ¶¶ 27–28. This decline was attributable in large part to the fact that the Defense Electronics Supply Center ("DESC") of the United States Department of Defense, an important customer of Unitrode, had placed a five month shipping hold on certain Unitrode products which then represented approximately 15 percent of Unitrode's sales. *Id.* DESC had placed this shipping hold on Unitrode after a DESC audit had revealed deficiencies in Unitrode's quality control procedures. *Id.* The shipping hold led to a 20 percent reduction in Unitrode's Semiconductor Products Division's workforce and a net loss of $19.9 million for the fiscal year ending January 1, 1988. *Id.* ¶¶ 27, 30.

Following this difficult year, Unitrode's management announced that it had taken steps to correct its quality control deficiencies, and began to predict promising earnings prospects for the company. *Id.* ¶¶ 35–50. The DESC ban had been lifted by the second quarter of fiscal year 1988, and the company's management, notably defendants Wasserman and Berman, publicly announced that the Company planned to achieve a 20 percent average annual growth in sales over the next five years. *Id.* ¶ 36. During the next year the company did report growth and profits reflecting an increase in sales at an average annual rate of about 20 percent, leading the Company to report in its fiscal year 1989 Annual Report that the revamped Semiconductor Products Division had "firmly re-established profitability."

By December 1989 (during the fourth quarter of fiscal year 1990), however, Unitrode began to announce publicly that it once again faced quality control problems in its Semiconductor Products Division. On December 11, 1989, the DESC issued another stop shipment order covering certain of the company's semiconductors, determining, as in 1987, that there were procedure and documentation deficiencies in the manufacturing process. *Id.* ¶ 53. On March 16, 1990 the company revealed the full extent of the bad news: Unitrode posted a fiscal year 1990 fourth quarter loss of $21.3 million, including a write-down of over $14 million for unusual charges and restructuring. The charge included reserves for anticipated product returns and damage claims arising from actions taken to correct deficiencies in quality control procedures. Also included were write-downs in the carrying values of inventories and losses attributable to the shipping holds placed by the DESC on Unitrode's Semiconductor Products Division. *Id.* ¶ 58. As a result of these difficulties, Unitrode's stock fell to $4.25 per share on March 16, 1990; at its zenith, during the proposed class period, the stock traded at $9.38 per share *Id.* ¶ 61.

Plaintiffs allege that during the class period defendants made various statements to the public via the press, annual and quarterly reports, and Securities and Exchange Commission filings, which fraudulently misled investors about Unitrode's financial prospects, and specifically about the company's success in overcoming its quality control problems. Plaintiffs charge that by knowingly or recklessly making false and misleading statements, and by failing to disclose ongoing quality control problems, defendants violated § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and engaged in negligent misrepresentation under state law. Plaintiffs further charge that the individual defendants are liable as controlling persons under § 20(a) of the Act and for aiding and abetting Unitrode in violation of § 10(b) and Rule 10b–5.

### III. *ANALYSIS*

In deciding this motion to dismiss under Fed.R.Civ.P. 12(b)(6) and 9(b), the court must draw all reasonable inferences in favor of the plaintiffs. *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). Furthermore, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

A. *Claims Under §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934 and SEC Rule 10b–5.*

1. *Rule 12(b)(6)*

To state a cause of action under the federal securities laws, a plaintiff must allege: 1) that he purchased or sold securities; 2) that defendants misrepresented or omitted material facts in connection with that purchase or sale; 3) that the misrepresentations or omissions were made knowingly or recklessly; and 4) that plaintiff relied on such misrepresentations or omissions to his detriment. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975); *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987).

William Steiner ("Steiner"), the named plaintiff, alleges that he purchased Unitrode stock, on March 9, 1988 and on October 19, 1988. Complaint ¶ 7. The complaint then details chronologically multiple statements

made by defendants throughout the proposed class period, alleging that they were knowingly or recklessly misleading to the investing public. As a preliminary matter, Defendants argue that the complaint should be dismissed because Steiner lacks standing to base his action on statements made after the date of his last stock purchase.

■ Defendants correctly argue that to survive the motion to dismiss the plaintiff must show that the statements or omissions which he claims are actionable under § 10(b) were made "in connection with" *his* purchase of stock. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. at 731–49, 95 S.Ct. at 1923–32. Though this action comprises a proposed class action, the court must assess standing to sue based on the actionable claims of the named plaintiff, and not upon the standing of unidentified class members. *See Adair v. Sorenson,* 134 F.R.D. 13, 16 (D.Mass.1991); *Konstantinakos v. Federal Deposit Ins. Corp.,* 719 F.Supp. 35, 37–38 (D.Mass.1989).

The named plaintiff, however, does plead that material misrepresentations were made by defendants prior to October 19, 1988. Plaintiff's complaint alleges that defendants knowingly made material misrepresentations on May 5, 1988, within Unitrode's annual report, and on May 25, 1988, when defendants Berman and Wasserman addressed a group of securities analysts. Complaint ¶¶ 35–36. Furthermore, plaintiff alleges that defendants omitted material information, by not disclosing ongoing quality control problems, in several quarterly reports disseminated prior to October 1988. Plaintiff, therefore, maintains the requisite standing to sue under § 10(b) and Rule 10b–5.

Plaintiff alleges that these misrepresentations and omissions were made knowingly, in an attempt to inflate Unitrode's stock price. Plaintiff adequately pleads reliance by alleging fraud on the market. Complaint ¶ 63. *See Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (holding that in federal securities actions reliance may be based on a fraud on the market theory). Finally, plaintiff has alleged that as a result of defendants' misrepresentations, and his reliance thereon, he sustained substantial damages. Complaint ¶ 77. Plaintiff has, therefore, alleged all of the elements necessary to sustain a cause of action under § 10(b) and Rule 10b–5.

### 2. *Pleading Fraud with Particularity*

■ Defendants argue, however, that plaintiffs have failed to meet the requirements of Fed.R.Civ.P. 9(b). When a complaint alleges fraud, Rule 9(b) requires that the allegations of fraud be plead with particularity. Contrary to plaintiff's arguments in their memoranda in opposition to defendants' motion, the strictures of Rule 9(b) continue to apply to federal securities fraud cases in the First Circuit. *See Greenstone v. Cambex Corp.,* 975 F.2d 22 (1st Cir.1992). The Court of Appeals for the First Circuit has held that under Rule 9(b), the complaint must specify the time, place and content of the alleged misrepresentation. *See Wayne Investment v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir. 1984). Furthermore, although scienter may be plead generally, the Court of Appeals for the First Circuit requires that the plaintiff provide specific facts supporting the allegation of fraud. *See Romani v. Shearson, Lehman Hutton,* 929 F.2d 875 (1st Cir.1991). Plaintiff must identify facts or circumstances showing that the alleged misrepresentations were false when made, and not merely proven wrong in hindsight. *See Berliner v. Lotus Development Corp.,* 783 F.Supp. 708 (D.Mass.1992).

■ Particularly in the securities fraud context, the Court of Appeals for the First Circuit has repeatedly required a strict application of Rule 9(b) because of the concern that the expensive nature of these suits gives plaintiffs incentive to file "strike suits" and seek extensive discovery in pursuit of an attractive settlement, regardless of the actual merits of the case. *See Romani,* 929 F.2d at 878; *see also Wayne Investment Inc. v. Gulf Oil Corp.,* 739 F.2d at 13. Largely for this reason, the requirement that plaintiffs plead specific facts in support of their allegations of fraud applies even where "the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.* at 14.

■ Plaintiff in this case adequately pleads the time, place and content of the alleged misrepresentations. Plaintiff points to specific statements made by Unitrode and signed by the individual defendants, giving them adequate notice of what they allegedly did wrong. Complaint ¶¶ 31–51. Plaintiff alleges that these statements conveyed a falsely sanguine impression about Unitrode's efforts and successes in tackling their quality control problems. *Id.* To support the allegations of fraud, plaintiff then points to the fact that no more than a year and a half after certain of these statements had been made, the DESC once again cited Unitrode for failure to comply with quality control specifications; these renewed problems resulted in substantial losses and restructuring. *Id.* ¶ 58. Plaintiff argues that these substantial quality control problems, eventually admitted by Unitrode in 1989, provide an adequate factual basis to raise the inference that the defendants knowingly misled the public, both when they announced Unitrode's turnaround, and as they continued to promulgate optimistic earnings statements.

Defendants insist that the fact that Unitrode in 1989 once again faced difficulties with its quality control measures cannot alone provide an adequate factual basis for concluding that defendants knowingly or recklessly misled the public about its efforts to address those problems in 1988. Defendants note that plaintiff has pointed to no specific quality control measure found inadequate by the DESC in 1987, which was not remedied by the time defendants made their positive statements in 1988. Defendants argue that plaintiff's reliance on the difficulties announced in 1989 to infer scienter in 1988 merely constitutes "fraud by hindsight," which has been held to be insufficient for purposes of stating a claim under the federal securities laws.

Defendants direct the court specifically to *Berliner,* 783 F.Supp. 708 (D.Mass.1992). In *Berliner* the court found that projections of when an important new product would be released, which later turned out be wrong, could not give rise to an actionable claim under § 10(b). While it is true that, as in *Berliner,* plaintiff here relies on post-statement events to impugn defendants' prior statements, plaintiff in this case proffers a more substantial factual predicate for alleging fraudulent intent. In *Berliner,* defendants made projections about a product in development. *Id.* Here, however, plaintiffs complain of statements made about corporate actions purportedly already taken. In the company's 1988 Annual Report, the following appeared over the signatures of Berman and Wasserman:

> We have put our problems behind us.... Unitrode's discrete Semiconductor division emerges from fiscal year 1988 stronger, more focussed, and better organized than at almost any time in its twenty-eight year history.... Never before in Unitrode's history had any division of the company not passed an audit, and never before has the government been as serious and stringent in its examination. As a result, *we have made certain that every procedure, every manual and every piece of equipment is in compliance, and we have retrained every operator in every aspect of his/her job.* (emphasis added).

This statement, which was more than a hopeful projection of things to come, affirmatively communicated that Unitrode had tackled and solved its quality control problems. Other statements allegedly made by defendants reinforced the notion that Unitrode had remedied its quality control difficulties and that such problems were no longer obstacles to profitability. *See* Complaint ¶¶ 31, 33, 36.

Plaintiff here has not alleged the kind of "fraud by hindsight" that courts in this circuit have refused to countenance. *See, e.g., Greenstone* 975 F.2d at 26–27 (dismissing allegation that eventual fact of a lawsuit gave rise to inference of prior knowledge that lawsuit was likely); *Romani* 929 F.2d at 878–880 (dismissing allegation that cash flow problems experienced several months after predictions of a rosy financial future gave rise to inference of knowledge that partnership's future was bleak); *Berliner,* 783 F.Supp. at 710–712. Nor has plaintiff simply quoted indiscriminately from the company's reports and public statements, without stating how those statements give rise to an inference of fraud. *See, e.g., Driscoll v.*

*Landmark Bank for Savings,* 758 F.Supp. 48, 53 (D.Mass.1991); *Konstantinakos v. Federal Deposit Ins. Corp.* 719 F.Supp. 35 (D.Mass.1989); *Haft v. Eastland Financial Corp.,* 755 F.Supp. 1123 (D.R.I.1991). In this case, plaintiff makes reference to particular statements where defendants indicated that a known problem had been addressed and remedied, only to be revealed later that the problem was not adequately corrected, resulting in significant losses to the corporation.

■ Defendant points out that Unitrode's management may not have been aware that the company's quality control problems persisted. In fact, Unitrode's management may have undertaken extensive efforts to bring Unitrode's quality control up to par, and may have acted in good faith when it asserted that the company was back on track. Indeed, as defendants point out, the DESC had lifted its shipping hold by the time defendants claimed that their problems were behind them, and the company did, in fact, augment its sales considerably during 1988.

However, while it is true that plaintiff has not in his pleadings alleged facts *negating* the possibility that the defendants did not knowingly or recklessly mislead the public about its quality control efforts, plaintiffs are not required at this stage to foreclose all alternative explanations of the facts supporting their allegations of fraud. For purposes of surviving a motion to dismiss under Rules 12(b)(6) and 9(b), plaintiff need only plead specific facts giving rise to an inference of fraud; plaintiff need not prove his case at this early stage. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Plaintiff alleges that the substantial restructuring that the company was forced to undertake in the company's Semiconductor division shows that serious quality control problems remained, that defendants knew these problems existed, and that the improvements they purportedly undertook in 1987 were merely cosmetic. Complaint ¶ 59. The court finds that the fact that serious problems of quality control re-emerged, in the same division of Unitrode's business which was deficient in 1987, gives rise to an

inference that defendants knowingly misled the public when they made statements such as: "[w]e have put our problems behind us . . . we have made certain that every procedure, every manual and every piece of equipment is in compliance" in the context of discussing their purported quality control improvements. Complaint ¶ 35.

Defendants further argue that, at most, plaintiff has alleged facts giving rise to an inference that the defendants were poor managers, and failed to accomplish all that was necessary to avoid future quality control problems. Defendants correctly state that corporate mismanagement alone does not constitute a violation of the federal securities laws. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977); *Ackerman v. Bankworcester Corp.,* 751 F.Supp. 11 (D.Mass. 1990) (dismissing under Rule 9(b) complaint which contained nothing more than conclusory allegations of poor bank management). Once again, however, defendants would have the court require too much from plaintiff at this stage of the litigation. Plaintiff here has done more in his complaint than merely couple management's hopeful predictions of future earnings together with allegations of mismanagement, as had the plaintiffs in *Ackerman,* 751 F.Supp. at 12. Here, plaintiff alleges that a company, faced with severe financial difficulties due to quality control problems, represented publicly that special efforts to control these problems had been undertaken and accomplished. That similar quality control problems, as severe as alleged by plaintiff, reemerged 18 months later gives rise to an inference that defendants were more than mere bad managers, and knowingly misled the public. This inference is reinforced by the fact that no public disclosure of renewed quality control difficulties was made until six days prior to DESC's reimposition of a shipping hold on certain of Untrobe's semiconductors. Complaint ¶¶ 52–53.

■ Finally, the defendants also suggest that plaintiff has not plead with the requisite specificity facts showing the culpability of each individual defendant. Plaintiffs do, however, link specific allegedly fraudulent statements to defendants Berman and Was-

serman. Complaint ¶¶ 9, 10, 33–36. Furthermore, all defendants allegedly signed the company's annual and quarterly Securities and Exchange Commission filings, which contain the alleged misrepresentations. Complaint ¶¶ 9–11. "When a complaint links a particular individual to a corporate document that he or she signed, and specifies what is fraudulent about that document, the individual is placed on notice about the nature of plaintiffs' claim and what role that individual is alleged to have played in the fraud. That is all that Rule 9(b) requires." *Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. 27, 32 (D.Mass.1989).

For the foregoing reasons, the court concludes that plaintiff's federal claims based on §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, and Rule 10b–5, should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or for failure to plead with sufficient particularity, under Fed. R.Civ.P. 9(b). Furthermore, because the court finds that plaintiff has adequately pleaded a cause of action against Unitrode and against the individual defendants for their direct participation in the alleged fraud, plaintiff's aiding and abetting claims also shall not be dismissed summarily. *See Cleary v. Perfectune, Inc.*, 700 F.2d 774, 777 (1st Cir.1983) (explicating elements of a claim for aiding and abetting under § 10(b) and Rule 10b–5.)

### B. *Claims Based on Negligent Misrepresentation*

 The defendants argue that plaintiff's pendent state law claim for negligent misrepresentation should be dismissed for failure to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). Under Massachusetts law a claim for negligent misrepresentation must plead privity between the parties; absent such privity, the plaintiff must prove that the defendant had actual knowledge of plaintiff's reliance. *See Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. at 34; *Page v. Frazier*, 388 Mass. 55, 65, 445 N.E.2d 148 (1983); *In re Bank of Boston Corp. Securities Litigation*, 762 F.Supp. 1525 (D.Mass. 1991). Plaintiff's complaint alleges neither privity between plaintiff and defendants nor defendants' actual knowledge of plaintiff's reliance on the allegedly misleading statements. Therefore, plaintiff's state law negligent misrepresentation claims must be dismissed.

### IV. *ORDER*

For the foregoing reasons, it is hereby ORDERED that:

1. Defendants' motion to dismiss plaintiff's federal securities fraud claims, under §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, and Securities and Exchange Commission Rule 10b–5, is DENIED.

2. Defendants' motion to dismiss plaintiff's common law claim of negligent misrepresentation is ALLOWED.

3. The parties shall by May 24, 1993, respond to the attached Scheduling Order. A scheduling conference will be held on June 18, 1993 at 10:30 a.m.