Brassard, J.
Plaintiffs lone Malloy and Patricia L. Malloy (collectively, “the Malloys”) bring this action for damages, alleging that defendant Rona Engineering Corporation (“Rona”) was negligent in its inspection of a house purchased by the Malloys, and in the representations made by Rona about the condition of the house. Rona now moves for summary judgment pursuant to Mass.R.Civ.P. 56(c) on Counts I and II of plaintiffs’ complaint, the only counts in which Rona is named. For the following reasons, Rona’s motion for summary judgment is ALLOWED.
BACKGROUND
On February 2, 1992, the Malloys made an offer to purchase a single-family home in Newton, Massachusetts (“the house”). The Malloys retained defendant Thomas A. Sheehan Company (“Sheehan”) to inspect the house for insects and pests. Sheehan’s report stated that while a careful visual inspection uncovered no evidence of active termites, Sheehan had discovered older termite damage to the main carrying beam in the laundry room, to a section of the main carrying beam adjacent to the front steps, and to part of the main sill in the downstairs bathroom.
The Malloys expressed their concern over Sheehan’s report to Agnes Korosi (“Korosi”), the real estate agent for the sellers of the house. Korosi offered to have the property inspected by a structural engineer, and to have the owners of the property pay for the inspection services, in order to allay the Malloys’ fears about the condition of the property. Korosi then contacted a structural engineer, Thomas Rona,[3] with whom she had been acquainted for many years, and arranged to meet him at the house. Rona went to the house and spent approximately fifteen to twenty minutes in the basement area. Rona maintains that he limited his inspection of the basement to the three specific areas Korosi pointed out to him.
The following day, February 11, 1992, Rona sent Korosi a letter, in which he stated that “I have inspected the basement area of the referenced building ...” The letter further stated that Rona had observed “some dry rot” in one wooden beam, which “does not create a structural support problem.” The letter also stated that a “slight dry rot intrusion was noticed” at the bottom of a window header and at the bottom of a beam in the storage room. The letter indicated that the problems with the beam and the window header “are structurally insignificant and can be disregarded.” Korosi passed Rona’s letter on to the Malloys.
The Malloys interpreted Rona’s statement that he had inspected “the basement area” to mean that he had conducted an inspection of the entire basement area. The Malloys further understood the letter’s reference to two areas of “structurally insignificant” damage to mean that apart from these two areas the basement was free of structural problems such as weak or damaged beams or sills. The Malloys were satisfied, after reading Rona’s letter, that the house was structurally sound. The Malloys signed a purchase and sale agreement with the sellers of the house on February 14, 1992, and closed on the house on April 15, 1992.
Shortly after the closing, the Malloys discovered that there was significant structural damage to the house from termites and rot. This damage included areas of weak and rotted wood, and a significant portion of this damage, although not all of it, was discovered in the basement area. The Malloys have expended in excess of $72,000 in repairing the house.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Plaintiffs have alleged that Rona was negligent in failing to exercise reasonable care during the inspection to discover significant damage to the premises and *445 in making representations that Rona had inspected “the basement area” of the house and that there was no structurally significant damage there. Plaintiffs claim that Rona’s duty to them arose from the contract for inspection services between Rona and the sellers of the house, because Rona should reasonably have foreseen that plaintiffs would rely on Rona’s performance of these inspection services.
A claim for negligence may arise from a contractual relationship, even though the plaintiff in the negligence claim is not a party to the contract. Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 113 (1990), Craig v. Everett Brooks, 351 Mass. 497, 499-00 (1967). The duty to a plaintiff who was not a party to the contract arises from the foreseeability of the plaintiffs reliance on the defendant’s performance of the contract. See Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 367-68 (1997); Flattery v. Gregory, 397 Mass. 143, 147 (1986) (recovery is limited to instances “where the defendant knew that the plaintiff would rely on his services”); Page v. Frazier, 388 Mass. 55, 64 (1983) (no liability where defendant did not know that plaintiffs would rely upon his services). The court will not impose a duty which would subject a defendant to liability “for an indeterminate time to an indeterminate class,” and the court will, therefore, look to see whether the defendant could have reasonably identified the plaintiff as someone who would rely on his performance. Craig, 351 Mass. at 500, quoting Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 179 (1930). The duty which the defendant owes to a third party in such an action may not be greater than the duty owed to the party to the contract. Craig, 351 Mass. at 499-00.
In the instant case, there is no evidence that Rona should reasonably have foreseen the Malloys’ reliance on his services. Plaintiffs attempt to show that Rona had notice that there was an interested buyer by pointing out that Rona and Korosi had been social acquaintances for approximately twenty years, that Rona knew that Korosi was a broker, and that Rona knew that home inspections were sometimes performed in the context of home purchases. Moreover, plaintiffs argue, Korosi has testified that while she did not know whether she had told Rona that there was a buyer interested in the property, she had “probably” done so.[4] These facts are not, however, sufficient to give rise to a reasonable inference that Rona knew that the Malloys or any other buyer would rely upon his inspection. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (“the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"). Rona testified at deposition that he was not aware that there was a buyer interested in the property at the time he performed his inspection, that he was retained by Korosi on behalf of the sellers of the house, that he was asked to write a report for the sellers, and that he had no knowledge that the results of his inspection would influence any buyer’s decision about purchasing the house. Since there is nothing in the summary judgment record to suggest that Rona knew that the plaintiffs or any other prospective purchaser would rely upon his report, there is no evidence that Rona owed a duty to plaintiffs, and therefore plaintiffs’ negligence claim must fail.
This court is unwilling to impose a duty in the circumstances of this case because to do so would subject service professionals to liability to unidentified persons other than their clients for a potentially long period of time. A professional cannot reasonably anticipate the circumstances of unknown persons when performing services for his client. In this case, Rona could not reasonably foresee that an unidentified buyer with whom he had not dealt would interpret the language “the basement area” differently than did Korosi, his client’s broker, who was present at the time of the inspection.
Plaintiffs’ negligent misrepresentation claim is similarly flawed. Plaintiffs claim that Rona’s statement that “I have inspected the basement area,” and his report of two areas of insignificant structural damage amount to a partial disclosure or half truth and is, in these circumstances, tantamount to an actionable falsehood. See Kannavos v. Annino, 356 Mass. 42, 49 (1969). The Malloys claim that by stating that he had inspected “the basement area,” Rona negligently led them to believe that he had inspected the entire basement and found it free of defects, instead of merely looking at the three areas he did inspect. A claim of negligent misrepresentation requires that the plaintiff prove either (1) that the plaintiff was in privity of contract with the defendant or (2) that the defendant had knowledge of the plaintiffs reliance. Steiner v. Unitrode Corp., 834 F.Supp. 40, 46 (D.Mass. 1993). For liability to attach, the defendant must have actual notice of the plaintiffs identity and of the plaintiffs reliance upon his performance. Craig, 351 Mass. at 499-500. Even if the report were construed as a half truth or partial disclosure, plaintiffs’ claim would still fail because plaintiffs have not shown that Rona had actual knowledge of their reliance upon his statements. As with plaintiffs’ negligence claim, there is no evidence to support plaintiffs’ claim that Rona knew of the Malloys’ individualized reliance.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED.

 Thomas Rona was, at all relevant times, a principal of Rona Engineering Corporation and acted as a professional engineer for the corporation. As Thomas Rona was the engineer who acted for Rona Engineering Corporation in the *446 course of the inspection at issue, the term “Rona” will be used interchangeably in this opinion to refer to Rona Engineering Corporation and to Thomas Rona himself.

 Korosi testified at deposition that she did not tell Rona that his findings were going to affect whether the home could be sold, that she did not tell Rona that his findings would affect whether or not a particular buyer would proceed with the sale of the home, and that she did not know, at the time she brought Rona to the house, whether his report was to be shared with the prospective buyers. Korosi further testified that it was not her belief that an inspector who comes to inspect a home on the market for sale is generally aware that the inspector’s findings are going to be shared with interested buyers, and that she was not sure that Rona knew there was a buyer. Korosi also testified that the report was to become the property of the sellers, and that she did not have a duty to disclose the contents of the report to the buyer. When Korosi was asked if she believed that Rona had “no idea" that there were interested buyers, she testified, "Probably. Probably he did. Probably I did mention. It was not the main discussion between the two of us ... He was not terribly interested in it, and I was not particularly inclined to discuss the matter.”